12 A.3d 116

**STATE of Maryland**

v.

**Dean CATES, Randy Kucsan, Bill Tran, Dana Way.**

**No. 107, Sept. Term, 2009.**

Court of Appeals of Maryland.

Jan. 24, 2011.

William A. Snoddy, Associate County Atty. (Marc P. Hansen, Acting County Atty., and Edward B. Lattner, Chief, Division of Human Resources & Appeals, Rockville, MD), on brief, for petitioner.

William J. Chen, Jr. (Chen, Walsh, Tecler & McCabe, LLP, Rockville, MD), on brief, for respondents.

Argued before BELL, C.J., HARRELL, GREENE, MURPHY, ADKINS, BARBERA and JOHN C. ELDRIDGE, (Retired, Specially Assigned), JJ.

ADKINS, J.

■  Respondents Dean Cates, Randy Kucsan, Bill Tran, and Dana Way (the "Officers") are police officers working for Montgomery County (the "County"). The County's automated speed monitoring system captured the Officers exceeding the posted speed limits in police vehicles at various locations in the County. The initial citations were issued to the County, as the owner of the police vehicles. The County and the Montgomery County Police Department (the "Department") determined that, although the Officers were on duty, they were not responding to emergencies, and the Department reissued the citations directly to the Officers. The Officers were found guilty in the District Court of Maryland, sitting in Montgomery County, and appealed their cases to the Circuit Court for Montgomery County for a consolidated, *de novo* trial. The Circuit Court reversed the District Court's judgment, holding that the Department's procedure for investigating the tickets violated the Officers' due process rights, and dismissed the charges.[1] We granted the State's Petition for a Writ of Certiorari[2] to consider the following questions:

> 1.  Whether a political subdivision may transfer liability to a police officer for a speed monitoring system citation when the police officer was on duty and operating an emergency vehicle in excess of the speed limit?

---

**1.**  In Circuit Court, the Officers' counsel made clear that "[e]ven though this [case] has a criminal number ... these are, in effect, civil appeals from the District Court." *See also* Md.Code (1977, 2009 Repl.Vol.), § 21–809(c) of the Transportation Article ("TA") ("[T]he driver of a motor vehicle is subject to a **civil penalty** if the motor vehicle is recorded by a speed monitoring system while being operated in violation of this subtitle.") (emphasis added). As this is a civil case, there is no double jeopardy issue presented.

**2.**  *See State v. Cates*, 410 Md. 702, 980 A.2d 482 (2009). This Court has *certiorari* jurisdiction in "any case in which a circuit court has rendered a final judgment on appeal from the District Court[.]" Md.Code, (1974, 2006 Repl.Vol.) § 12–305 of the Courts and Judicial Proceedings Article ("CJP"); *see also State v. Monroe*, 82 Md.App. 65, 70, 570 A.2d 338, 340 (1990) (review by *certiorari* is the "sole additional avenue of review" in such a case).

2. Whether a police officer is entitled to "due process" before liability for a speed monitoring system citation may be transferred to the officer?

We shall hold that the Officers would be subject to liability for operating their vehicles in excess of the speed limit, even while on-duty, and that the Officers were not deprived of due process, but instead were afforded ample opportunity to contest their liability under the statute.

## FACTS AND LEGAL PROCEEDINGS

*1. The Automated Enforcement Program ("AEP")*

As part of its effort to enforce traffic laws, the County uses speed monitoring systems, which are "device[s] with one or more motor vehicle sensors producing recorded images of motor vehicles traveling at speeds at least 10 miles per hour above the posted speed limit." Md.Code (1977, 2009 Repl. Vol.), § 21–809(a)(5) of the Transportation Article ("TA").[3] The statute provides that anyone thus cited, or anyone to whom a citation is reissued, may "[e]lect to stand trial in the District Court for the alleged violation." TA § 21–809(d)(5)(ii). At trial, the cited person may present evidence that they were not driving the vehicle, as well as "[a]ny other issues and evidence that the District Court deems pertinent." TA § 21–809(f)(1). The cited person may also argue that the State has failed to meet the numerous requirements of TA Section 21–809.[4]

---

**3.** The statutes in operation at the time of the citations in question are located in the 2009 Replacement Volume of the Transportation Article, Vol. 2. Unless stated otherwise, all citations to the Maryland Code in this opinion refer to this version of the statute. The provisions of the 2009 Supplement to the Transportation Article were not in effect at the time the Officers were cited for speeding.

**4.** For instance, according to TA Section 21–809(d)(1)(vi), the State must supply the cited person with a copy of the "recorded image" showing:
    1. The rear of a motor vehicle;
    2. At least two time-stamped images of the motor vehicle that include the same stationary object near the motor vehicle; and

TA Section 21–809 also provides the procedures required in the District Court before the Department may reissue a citation to a non-owner.[5] During the District Court hearing, the owner of a cited vehicle may present "evidence that the person named in the citation was not operating the vehicle at the time of the violation[.]" TA § 21–809(f)(ii). The owner must then provide the District Court with:

... a letter, sworn to or affirmed by the person and mailed by certified mail, return receipt requested, that:

(i) States that the person named in the citation was not operating the vehicle at the time of the violation;

(ii) Provides the name, address, and, if possible, the driver's license identification number of the person who was operating the vehicle at the time of the violation; and

(iii) Includes any other corroborating evidence.

TA § 21–809(f)(3). Then, "[i]f the District Court finds that the person named in the citation was not operating the vehicle at the time of the violation or receives evidence ... identifying the person driving the vehicle at the time of the violation," the District Court must forward the file to the Department so that it may reissue the citation in the alleged driver's name. TA § 21–809(f)(4).

Arguably, the formality of the District Court proceeding varies depending on who, or what, owns the vehicle. Where the owner of the vehicle is a person, that person must convince

---

3. On at least one image or portion of the tape, a clear identification of the registration plate number of the motor vehicle.
TA § 21–809(a)(4)(ii).
The State must also keep on file (1) a certificate of training for the speed monitoring system operator from the system's manufacturer, (2) "a daily set-up log" for the speed-monitoring system that "[s]tates that the speed monitoring system operator successfully performed the manufacturer-specified self-test of the speed monitoring system prior to producing a recorded image[,]" and (3) a signed certificate from an independent calibration laboratory that the speed-monitoring system has undergone an annual calibration check. TA § 21–809(b)(2)–(4).

5. The Department cannot mail a citation to a person who is not the owner of the vehicle unless it complies with these procedures. *See* TA § 21–809(d)(3).

the District Court with credible evidence that she was not driving at the time of the citation. Where the owner, however, is an entity (such as the Police Department), which is physically incapable of operating a vehicle, the required procedure is less clear. Presumably the District Court will always find that the entity was not the vehicle's actual operator. Once the District Court has determined that the owner was not driving, the District Court's only remaining statutory tasks are to "receive[ ] evidence" of the identity of alleged driver, and to "provide to the local police department a copy of any evidence substantiating who was operating the vehicle at the time of the violation." TA § 21–809(f)(4)(i).

When a police vehicle is captured speeding by the Automated Enforcement Program (the "AEP"), the Department uses an internal procedure, as opposed to this statutory procedure, to reissue a citation to the responsible officer.[6] According to the testimony of AEP's director, the AEP staff first determines whether the vehicle was using its emergency lights and/or sirens:

> [W]hen we see an event, or, which is an image, a picture of the, of a vehicle going through one of our cameras, and if that picture clearly shows that the vehicle in the picture, which is a, whether it be a Montgomery County Police

---

**6.** From the record, there is no rule, regulation, or statute pursuant to which the Police Department conducts this investigation. While TA Section 21–809(i) authorizes the Chief Judge of the District Court to establish procedures for the issuance of citations, "[i]n consultation with the Montgomery County Department of Finance and the local police departments," no such procedure has been presented to this Court.

In its reply brief, the State asserts that "had this issue been raised in the [C]ircuit [C]ourt, the County would have readily produced evidence demonstrating that the [Department] does request and receive approval from the District Court before reissuing citations to officers." At oral argument before this Court, the State's counsel again argued that the Department had complied with the mandate of the statute, and had in fact submitted the citations to the District Court as a precursor to reissuance. While we agree with the County that the Officers did not focus on this argument at trial, we find that Maurice Wilson, director of the AEP, testified in detail about the AEP's procedures for issuing tickets, and did not mention any resort to the District Court.

Department vehicle or a Fire and Rescue vehicle, or some emergency vehicle, **if there are lights and sirens, then we would then not issue that citation.**

If there is no corroborating physical evidence that this, that the vehicle was attending to an emergency situation, then the citation would be issued similar to every other citation that we issue.

(Emphasis added). Without physical evidence that the officer was responding to the emergency, the AEP issues a citation to the Department, which is the owner of the vehicles.

Upon receiving a citation, the Department further checks the Computer–Aided Dispatch ("CAD") reports to determine if the operating Officer was responding to an emergency at the time. If the CAD reports demonstrate that the Officer was responding to an emergency, the Department sends a written request to the AEP to void the citation. If, however, the Department

... doesn't find on the CAD report an exact notation or incident that corresponds with the time of the ticket; for example, that there was a traffic stop, or that they were pursuing somebody, or they had their lights and flashers on, it was an emergency run—if they don't see an exact denotation on the CAD report to match the time of the ticket, preliminarily, they say that it wasn't an authorized speed. And the officer was unauthorized in going fast because it's not on the CAD report.

If neither the recording nor the CAD reports demonstrate that the Officer was responding to an emergency, the Department initiates a third layer of investigation, in which it interviews the Officer to determine if she had a justification for speeding. The Department summarizes the result of its investigation to the AEP in a memo, with a recommendation either to reissue the ticket to the Officer or to void the citation.

2. *The Officers' Citations*

The Respondents in this case are all police officers employed by Montgomery County. Each officer—Dean Cates,

Randy Kucsan, Bill Tran, and Dana Way—was recorded speeding by the AEP in 2008.[7] The Officers were on-duty and driving official police vehicles when the cameras captured them speeding. In its initial review of the recordings, the AEP did not observe emergency lights or sirens, and issued initial citations to the Montgomery County Department of Police, the owner of the Officers' vehicles, as required by the statute. *See* TA § 21–809(d)(1). The Department compared the complaints against the CAD reports, and found no evidence that the Officers had been responding to an emergency at the time. The Department then forwarded the complaints to the Officers' respective divisions. The Officers' supervisors interviewed the Officers and, in each case, found no justification for the speeding violations. Accordingly, the Department sent memoranda to the AEP, directing them to reissue the citations in the Officers' names.[8]

The Officers elected to plead not guilty and stand trial for their violations in the District Court, sitting in Montgomery County. The trials, heard together, occurred on March 9, 2009, and the District Court found each Officer guilty. The Officers appealed to the Circuit Court, where they received a *de novo* trial on July 13, 2009.

At trial, the Officers stipulated to most of the facts. The Officers did not dispute that the speed cameras were properly functioning, and they admitted to driving the vehicles. Moreover, the Officer did not contest the CAD reports, which failed to show an emergency to which they were responding.

Instead, the Officers advanced two due process arguments, each based on a concept of justified speeding. First, the

---

**7.** Cates was cited for traveling 50 MPH in a 25 MPH zone on September 8, 2008; Kucsan for traveling 36 MPH in a 25 MPH zone on October 23, 2008; Tran for traveling 51 MPH in a 25 MPH zone on July 25, 2008; and Way for traveling 46 MPH in a 35 MPH zone on May 28, 2008.

**8.** The Department reissued a citation to Cates on January 2, 2009; reissued a citation to Kucsan on January 2, 2009; reissued a citation to Tran on January 8, 2009; and reissued a citation to Way on December 9, 2008.

Officers argued that the Department failed to follow the statutory procedure for re-issuing the citations, and instead "created [its] own procedure, which is not by statute" and "without legislative authority." The Officers claim that this internal procedure caused delay, which prevented them from remembering their justification for speeding:

Now, due, on a due process argument, we submit that the [O]fficers' due process rights have been violated.

One, it's often weeks or months after they get the ticket where they're asked by their sergeant, "Why were you going, why were you speeding?" And I have not seen a case yet where the officer could recall a reason. If it's not on the CAD report, basically, their responses are, "I have no explanation." And we submit that's a due process violation . . .

\* \* \*

Secondly, Your Honor, the County has taken too much time in getting these tickets processed through their own internal investigation until the case comes to court. It's often months before the officer's required to go to court. Again, a due process violation. How are they going to recall that it wasn't because they were speeding to stop a kid from running in the street, chasing a ball; or a person in a wheelchair was spinning.

The Officers' counsel then continued:

[T]hat's exactly our argument, that there are many, many reasons for an officer to speed that are lawful and justified. But because they're not on the CAD report, or they don't recall, [they are liable for the citation] . . .

\* \* \*

. . . [W]hen an officer is on duty in an authorized vehicle, they are entitled to speed for public safety and lawful reasons.

For example, a ball is running, you know, running across a street, and a kid is going to run into the street. The officer may speed up to stop traffic, stop the boy.

\* \* \*

... There are so many reasons for an officer to accelerate.

And then they're asked, and that's why I brought up the time frames, you know, some of these times where they, between the ticket being issued and when the County says, "Officer, you're responsible," is months later. We don't know exactly when he's questioned, but some of these are months later. And the, they can't remember. How are they going to remember what they did yesterday? I mean, an officer's in his car for eight hours, 10 hours. And if they're accelerating for a lawful purpose, and it's not on the CAD, or they can't remember, then they get the ticket.

We're saying the whole process violates their due process.

\* \* \*

... [T]he fact that an officer is speeding, and it's not on the CAD report, and he can't recall two months later why, violates his due process to force him to be penalized under a statute which is not incorporating their action. . . .

Second, the Officers argued that the Department's unwritten investigation policy provided inefficient notice as to what speeding was justified and could lead to arbitrary results. The trial court agreed:

[T]here's no written policy that says, "We, we'll take reasons (a) through (d), but don't come in here with (e), (f), and (g)[.]

\* \* \*

Why isn't that not arbitrary? What if—I'm not saying this—what if Captain A thinks it's a good reason, but Captain B doesn't think it's a good reason?

\* \* \*

You're going to have two different results

\* \* \*

... [Y]ou agree that Captain A could say the reason is fine, Captain B could say the reason is not fine, who knows what Captain C would say.

\* \* \*

... The procedures do not have to be unduly sophisticated or unduly elaborate. . . .

But it seems to me that if the Department is going to institute a system, it should be in writing, distributed—it could be a page, it doesn't mean it has to be 200 pages—setting forth those elements which will result in exoneration, and those elements which will not. I understand there's always a gray area which is left to discretion, but it could be said, Point A, if you're doing (a), (b), and (c), and you can prove it, you win; B, if you're doing any of the things listed in B, you lose. Okay? For example, not on duty, going to Johnny's soccer game. Can't do that. It's against Department policy. And C could be the gray area.

But it'll be delineated so that the individuals driving the vehicles know what's expected of them, and the individuals deciding these matters will know what's, what the parameters are. Like I'm saying, it does not have to be unduly formal; it could be a page or two.

The Circuit Court thus reversed the Officers' convictions on the grounds that the Department violated their due process rights through its informal investigation policy for determining whether violations ought to be reissued. The State petitioned this Court for a writ of certiorari. We granted the State's petition.

## DISCUSSION

In their briefs, the parties present different arguments from those relied upon by them in the Circuit Court. The Officers shift their theory from the assertion that their speeding could have been justified, and instead focus on the Department's failure to comply with the statutory procedure. Accordingly, the Officers do not contest the applicability of TA Section 21–

106, which requires that Officers follow the rules of the road except in limited circumstances.

The County claims that police officers are subject to the "rules of the road," and may not break the speed limit except where allowed by TA Sections § 21–106(a) and (b)(3). The County thus argues that the Circuit Court erred in its underlying assumption that speeding may be justified even though the Officers did not engage their lights or siren and were not responding to an emergency listed in the CAD report. The County also argues that the Officers failed to preserve the current iteration of its due process argument, which focuses not on the possibility that the Officers were justified in speeding, but merely on the asserted statutory deviation by the Department.

■ This case presents only issues of law, involving questions of constitutional rights and statutory interpretation, and will therefore be reviewed *de novo*. *See, e.g.*, *Renbaum v. Custom Holding, Inc.*, 386 Md. 28, 43, 871 A.2d 554, 563 (2005) ("Decisions on matters of law are reviewed *de novo*.") While the "due process" issue is the determinative issue here, we will first address the issues of preservation and the "rules of the road."

## Preservation

■ The State argues that the Officers failed to preserve what we interpret as their principal argument in this Court—that the Department violated the Officers' rights by reissuing the citations without observing the procedures required by TA Section 21–809. The State correctly points out that this Court "ordinarily will consider only an issue ... that has been preserved for review[.]" Md. Rule 8–131(b). The State also recognizes our holding that "[a]n appellee, in seeking an affirmance, is ordinarily entitled to assert any ground shown by the record for upholding the trial court's decision, even though the ground was not relied on by the trial court and was

perhaps not raised in the trial court by the parties." *Grant v. State*, 299 Md. 47, 53 n. 3, 472 A.2d 459, 462 n. 3 (1984).[9]

Despite the Officers' recharacterization of their argument, our review of the record in the Circuit Court shows that the Officers did raise the issue of the Department's failure to follow the statute. At trial, the Officers's counsel made the following statement to the court:

> Here, the Police Department has set up their own procedure, which is not by statute. They have created their own procedure without legislative authority. And their procedure is that when the County gets the ticket, the County refers it to the Police Department, which is the agency assigned to the vehicle; then the Police Department does an internal investigation, and they determine whether or not the ticket should be voided, or who was driving, and [if] the officer should pay. The County has refused to pay these tickets.

This statement establishes, on the record, the Officers' objections to the procedure used by the Department, and to its circumvention of the applicable statutes. We are therefore satisfied that the principal argument the Officers present to this Court has been preserved for review.

### Police Officers and "The Rules of the Road"

■ While the Officers do not argue, on appeal to this Court, that they are exempt from the so-called "rules of the road," the issue is integral to the resolution of this case.

The relevant statute, TA Section 21–106, grants certain privileges to the drivers of various emergency vehicles.[10]

---

**9.** Although we may consider an issue not raised by the parties *in the trial court*, we "will not ordinarily consider an issue which was not raised in the petition for a writ of certiorari, in a cross-petition or in the Court's order granting certiorari." *Robeson v. State*, 285 Md. 498, 502, 403 A.2d 1221, 1223 (1979). *See also* Md. Rule 8–131(b)(1) ("[T]he Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition[.]").

**10.** "Emergency vehicles" are defined as:

There are precisely three circumstances in which the driver of an emergency vehicle may violate traffic laws: "(1) Responding to an emergency call; (2) Pursuing a violator or suspected violator of the law; or (3) Responding to, but not while returning from, a fire alarm." TA § 21–106(a). The statute also enumerates the traffic laws which may be violated:

> *Under the [three] circumstances stated* ... the driver of an emergency vehicle may:
>
> (1) Park or stand without regard to the other provisions of [Title 21];
>
> (2) Pass a red or stop signal, a stop sign, or a yield sign, but only after slowing down as necessary for safety;
>
> (3) *Exceed any maximum speed limit,* but only so long as the driver does not endanger life or property; and
>
> (4) Disregard any traffic control device or regulation governing direction of movement or turning in a specified direction.

TA § 21–106(b) (emphasis added).

Even when the driver is operating under one of the circumstances listed in Section 21–106(a), she does not have carte blanche to violate traffic laws. There are two further restrictions on such a driver. First, the driver must also be in compliance with TA Section 21–106(c), which requires that the driver of an emergency vehicle must be using her vehicle's sirens, flashing lights, alarm bells, exhaust whistles, or other alert signals, at the time of the violation. *See* TA § 21–106(c)

---

(1) *Vehicles of federal, State, or local law enforcement agencies;*

(2) Vehicles of volunteer fire companies, rescue squads, fire departments, the Maryland Institute for Emergency Medical Services Systems, and the Maryland Fire and Rescue Institute;

(3) State vehicles used in response to oil or hazardous materials spills;

(4) State vehicles designated for emergency use by the Commissioner of Correction;

(5) Ambulances; and

(6) Special vehicles funded or provided by federal, State, or local government and used for emergency or rescue purposes in this State. Md.Code (1977, 2009 Repl.Vol.), § 11–118 of the Transportation Article ("TA") (emphasis added).

(requiring the use of alarms in order to engage in a privileged violation of the rules of the road); *see also* TA § 22–218 (outlining permissible and required forms of alarms on emergency vehicles). Second, a driver who is in compliance with all of these requirements still bears "the duty to drive with due regard for the safety of all persons." TA § 21–106(d).

The provisions of TA Section 21–106 make clear that drivers of emergency vehicles are subject to the rules of the road except under extremely limited, specifically delineated circumstances. There is no suggestion in this record that the Officers' alleged speeding occurred in response to an emergency call, while pursuing a suspected violator of the law, or in connection with a fire alarm as required by Section 21–106(a).

### Due Process

■ In analyzing the final issue on appeal—whether the Department violated the Officers' due process rights—it is important to clarify the "private interest" [11] which the Officers assert was inadequately protected, and those which they do not. The Officers do not contend, as they did below, that the unwritten policy of investigations by the Department would lead to inconsistent results as to what speeding was justified. The Officers abandoned this argument, perhaps in recognition that police officers are subject to the "rules of the road" except in limited circumstances. Nor do the Officers contend that they were deprived of an adequate hearing to contest the actual violations before paying the fines. Indeed, the Officers had an opportunity to stand trial in District Court and a *de novo* trial in Circuit Court.

Instead, the Officers assert that the Department deprived them of a *statutory right to a District Court proceeding* before the tickets were reissued, as the Department identified the drivers of the police vehicles internally and reissued the

---

11. Procedural due process under the Federal Constitution is only implicated where a party faces the "deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

citations without first submitting evidence to the District Court. The Officers argue that this procedure deprived them of a "judicial finding as to whether a speed camera citation should be reissued." The Department's chosen procedure, the Officers state, caused inordinate delay that deprived them of due process. Alternatively, the Officers argue that this is an extreme case where proving the statutory violation itself is enough to show a due process violation.

The Officers first claim—that their due process was violated by "delay"—is a vestige of their argument at trial that they could not remember their justifications for speeding. The Officers use as an example the "delay" caused to Cates:

> The citation was first issued to the "owner", the County. Its violation date is September 17, 2008; it was mailed to the County on September 17, 2008; and its due date is October 17, 2008
>
> ... [I]f the County followed the statutory procedure it would have notified the District Court on or before October 12, 2008, that [Cates] was responsible. . . .

After being notified on October 12, 2008, the District Court would instruct the clerk of the court to provide the Police Department with the evidence, and "[u]pon receipt of that evidence, the Police Department had 2 weeks to re-issue a citation[.]" The Officers argue that, because Cates did not receive a citation until January 2, 2009, the Department's procedure created months of delay that the statutory procedure would have avoided.

While an inordinate delay might deprive an officer of due process, the Officers have failed to show any significant delay in receiving notice. The Officers received notice of the charges at least as early as when they were interviewed by the Department, well before the citations were reissued in their names. By the Officers' own admission, for example, Cates was interviewed by the Department regarding the charges on or before November 13, 2008, the date the Department completed its investigation. Cates thus had notice of his charges, at the latest, one month after the Department should have

submitted his identity to the District Court.[12]   We will not speculate how long it would have taken the citation to navigate the District Court, return to the Police Department, and then be reissued to Cates, but it would not have been significantly earlier, if earlier at all, than November 13, 2008.   Moreover, in two of the Officers' cases, the Department's procedure actually provided notice to them before the statutory process would have even begun.[13]   The time that passed during the Department's internal investigation, but *after* the Officers received notice of the alleged speeding violations, did not violate their due process.   As the County argued at trial, the Officers were no worse off than a regular citizen who could be issued a citation months after the violation date.[14]

---

12.   This one month delay was the longest experienced by any of the four officers.   In second place sits Tran, who received notice within three weeks of when the District Court would have begun its proceeding. The County was cited for Tran's violation on August 8, 2008, and was therefore required to submit his identity to the District Court by September 3, 2008.   The Department completed its investigation of Tran by September 19, 2008.

13.   Kucsan received notice before the reissuance procedure would have begun.   The County was cited for Kucsan's violation on October 31, 2008.   According to the Officers' calculation, the County should have submitted his identity to the District Court by November 25, 2008.   The Department had completed its investigation, thus giving notice to Kucsan by November 21, 2008.

   Way also received notice before the reissuance procedure would have begun.   The County was cited for Way's violation on June 11, 2008, and thus, should have submitted Way's identity to the District Court by July 5, 2008.   The Department completed its procedure, however, by June 26, 2008.

14.   Under the statutory process, the District Court could wait months before directing the Department to reissue a citation.   Maryland law requires a vehicle owner who wishes to challenge the citation to request a trial "at least 5 days prior to the date of payment as set forth in the citation."   CJP § 7–302(e)(1).   The Transportation Article also imposes a time limit *after* the ex parte preliminary District Court proceeding, requiring the Department to reissue a citation "no later than 2 weeks after receipt of the evidence from the District Court."   TA § 21–809(f)(4)(iii).   There is no statutory time constraint, however, on the District Court's processing of the citation after the vehicle owner returns the citation with an affidavit attesting that she was not the driver, and identifying the actual driver.

■ Alternatively, the Officers' assert that the departure from the statutory procedure "alone and without more, was sufficient 'to create an unfairness or arbitrariness in the proceeding that [is] of Constitutional significance[,]' " citing *Calvert County Planning Commission v. Howlin Realty Management*, 364 Md. 301, 322, 772 A.2d 1209, 1221 (2001). The language from *Howlin* quoted by the Officers, however, is part of a larger section in which we emphasized that a due process claim requires more:

Due process is concerned with fundamental fairness in [a] proceeding, not with whether the agency has failed in some way to comply with a statutory requirement. A statutory violation may, in some instances, suffice to create an unfairness or arbitrariness in the proceeding that would be of Constitutional significance, **but the Constitutional deficiency would then be in the effect of the statutory violation, not in the violation itself.**

*Howlin*, 364 Md. at 322, 772 A.2d at 1221 (citations omitted) (emphasis added). A due process claimant must still show some unfairness or arbitrariness caused by a statutory violation.

Our holding in *Howlin*, moreover, supports the County's assertion that informal procedures may satisfy due process requirements where they do not create procedural unfairness. In *Howlin*, we considered whether the Calvert County Planning Commission violated the due process rights of the owner of subdivided lots of land. *Howlin*, 364 Md. at 305, 772 A.2d at 1211. In an argument similar to the Officers', the owner in *Howlin* argued that a statutory deviation was a due process violation:

Section 3.03 provides generally for the organization of the commissions—election of a chairperson, frequency and openness of meetings. That section states that a planning commission "shall adopt rules for transactions of business and shall keep records of its resolutions, transactions, findings, and determinations." At the time this matter was presented to and heard by the Commission, it had not adopted any formal, written rules, at least not any dealing

with the reconsideration of an earlier approval of a subdivision. HRM complained about that lack, arguing . . . that the statutory violation alone precluded the Commission from proceeding[.]

*Id.* at 321, 772 A.2d at 1220. We rejected the owner's claim, however, and held that due process had been satisfied because the Commission set forth, orally, the procedures at the start of the hearing. *Id.* at 326–28, 772 A.2d at 1223–25. *Howlin* instructs us that due process does not always require strict adherence to statutory procedures where administrative action is governed by statute.

Identifying a deviation from statutory procedure, therefore, does not end our due process inquiry. Instead, we determine what procedure is required by the Maryland Declaration of Rights, Article 24, and the Fourteenth Amendment to the U.S. Constitution. The minimum requirements of procedural due process are "notice and opportunity for hearing **appropriate to the nature of the case.**" *Canaj, Inc. v. Baker & Div. Phase III,* 391 Md. 374, 424, 893 A.2d 1067, 1097 (2006), *quoting Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950) (emphasis added). To determine the specific nature of procedures required, we engage in the balancing test set forth by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), where we determine three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Under the *Mathews* test, due process "is flexible and calls only for such procedural protections as the particular situation demands. Procedures adequate under one set of facts may

not be sufficient in a different situation." *Dep't of Transp. v. Armacost*, 299 Md. 392, 416, 474 A.2d 191, 203 (1984) (citation omitted).

We have also stated that "due process does not necessarily mean judicial process. It is sufficient if there is at some stage an opportunity to be heard suitable to the occasion and an opportunity for judicial review[.]" *Burke v. Fidelity Trust Co.*, 202 Md. 178, 188, 96 A.2d 254, 260 (1953); *see also Anderson National Bank v. Luckett*, 321 U.S. 233, 246, 64 S.Ct. 599, 606, 88 L.Ed. 692 (1944) ("[I]t is not an indispensable requirement of due process that every procedure affecting the ownership or disposition of property be exclusively by judicial proceeding."). Thus, we look at whether the amount of procedure provided by the agency, along with opportunities for judicial review, gave the parties proper notice and a fair opportunity to be heard.

Applying these standards, we find that the Officers' private interest—the right to a District Court finding before reissuance of the citation—is of limited importance. The statutory reissuance procedure is entirely concerned with *ascertaining the identity* of the driver. Red-light and speeding cameras present a unique problem concerning identity: owners of vehicles could be cited for other drivers' violations, and owners could mis-identify a person as the operator of a cited vehicle to escape liability. The drafters of Section 21–809 thus created the above procedure, an ex parte proceeding with limited evidentiary scope, to assist the Department and District Court in identifying the driver. The reissuance procedure provides no additional procedural protections to a person accused of speeding—the alleged speeder has no right to notice of this proceeding nor a right to appear and contest his identification as the driver. Instead, those protections are provided at the District Court hearing after reissuance. The Officers were not entitled to notice of these ex parte proceedings nor did they have a right to appear and defend themselves. The statute provides those rights through the later District Court hearing *after* reissuance, and the Officers were given that hearing, as well as the *de novo* Circuit Court hearing.

Additionally, the risk, if any, that an Officer will be mis-identified as the operator of a vehicle through the Department's procedure is low. The record suggests instead that the Department's identification of the drivers of the implicated vehicles was accurate and likely supported by the CAD records. Indeed, the Officers have not contested that they were the drivers, nor have the Officers demonstrated on the record *any* likelihood that the Department would mis-identify the driver of a police vehicle.[15]

We also find guidance in *Chevy Chase Village v. Montgomery County Board of Appeals,* 249 Md. 334, 346–347, 239 A.2d 740, 745–746 (1968). In *Chevy Chase Village,* the petitioners argued that Montgomery County violated due process by failing to provide them a hearing before granting a permit to a developer to build a high-rise, luxury building. *See id.* at 337, 239 A.2d at 740. In rejecting that claim, we reasoned that the subsequent judicial review satisfied the minimums of due process: "even if it be assumed that a hearing would have been required if the statutes offered no opportunity for [judicial review], there was such an opportunity and the appellants availed themselves of it and thereby cannot successfully complain that they were constitutionally aggrieved." *Id.* at 346, 239 A.2d at 745. *See also Albert v. Public Service Com.,* 209 Md. 27, 39–40, 120 A.2d 346, 352 (1956) ("Where the question has been a close one as to whether due process required a hearing in a given situation, the fact that a court review was afforded has been held to swing the decision to the side where no hearing is necessary.")

Although *Chevy Chase Village* dealt with a different administrative procedure, that case demonstrates that we should consider, when analyzing a due process claim, whether the statute provides a "backstop" of procedural protections in the

---

**15.** While the issue was not fully addressed at trial, CAD systems can record highly detailed information about a police officer's activities. *See Prince George's County v. Brent,* 414 Md. 334, 351, 995 A.2d 672, 682 (2010) (factual record included CAD reports which showed identity of responding officer, time of dispatch, time of arrival, and whether other officers were also dispatched).

form of judicial review. Here, like petitioners in *Chevy Chase Village,* the Officers received additional protections after the reissuance of the tickets in the form of a consolidated District Court hearing in which the they could contest their identification by the Police Department.

Given the Officers' limited interest in an initial ex parte District Court proceeding, the absence of a risk of mis-identification, and the later opportunity for a District Court trial, not to mention the right of *de novo* appeal to the Circuit Court, we see no due process violation. Indeed, the Officers have not argued that the Department's procedures for identifying the vehicles' operators will lead to mis-identifications or otherwise undermine the accuracy, consistency, or procedural fairness of the citations. The accuracy of the Department's investigations was affirmed by the Officers' stipulation to every relevant fact at trial. Due process does not require strict adherence to a statute by an administrative agency where such adherence would provide no additional guarantees of fairness, notice, or an opportunity to be heard.

**JUDGMENTS OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY VACATED. CASE REMANDED TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY RESPONDENTS.**

