48 A.3d 242

**Merle UNGER**

v.

**STATE of Maryland.**

**No. 111, Sept. Term, 2009.**

Court of Appeals of Maryland.

May 24, 2012.

Reconsideration Denied Aug. 16, 2012.

384

Daniel H. Ginsburg and Gary E. Bair (Bennett & Bair, LLC, Greenbelt, MD), on brief, for petitioner.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, on brief), for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY*, ADKINS and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

JOHN C. ELDRIDGE (Retired, Specially Assigned), J.

## I.

This is an action under the Maryland Uniform Postconviction Procedure Act, now codified as Maryland Code (2001, 2008 Repl.Vol.), § 7–101 *et seq.* of the Criminal Procedure Article. The action involves the Maryland constitutional provision, Article 23, paragraph one, of the Maryland Declaration of Rights, which provides in mandatory language as follows:

"In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction." [1]

Before turning to the facts of the present case, a brief review of a few cases since 1980, dealing with the above-quoted provision, would be helpful.

In *Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980), the majority opinion of this Court refused to interpret Article 23 in accordance with the plain meaning of its lan-

---

\* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision or adoption of this opinion.

1. Hereafter in this opinion, all references to Article 23 of the Declaration of Rights shall be to the first paragraph of Article 23.

guage.[2] Instead, the *Stevenson* opinion construed Article 23 as limiting the jury's role of deciding the law to non-constitutional "disputes as to the substantive 'law of the crime,' as well as the 'legal effect of the evidence,'" *Stevenson*, 289 Md. at 180, 423 A.2d at 565. The *Stevenson* opinion stated "that all other legal issues are for the judge alone to decide." 289 Md. at 179, 423 A.2d at 565. Furthermore, the majority in *Stevenson* held that its construction of Article 23 was not a new interpretation of the provision and that "this Court has consistently interpreted this constitutional provision as restraining the jury's law deciding power to this limited ... area." 289 Md. at 178, 423 A.2d at 564. Finally, the majority in *Stevenson*, 289 Md. at 181–188, 423 A.2d at 566–570, held that Article 23, as interpreted by the majority, did not on its face violate the Constitution of the United States.[3]

The *Stevenson* interpretation of Article 23 was reaffirmed in *Montgomery v. State*, 292 Md. 84, 89, 437 A.2d 654, 657 (1981), where the majority of the Court held that the jury's role as judge of the law

"is limited to those instances when the jury is the final arbiter of the law of the crime. Such instances arise when ... [there is] a dispute as to the proper interpretation of the

---

**2.** *Stevenson*, 289 Md. at 181–188, 423 A.2d at 565–569, indicated that a literal interpretation and application of Article 23, paragraph one, would violate the Due Process Clause of the Fourteenth Amendment and perhaps violate the Jury Trial Clause of the Sixth Amendment. As pointed out in *Stevenson* and subsequent cases, a judge's instructions to the jury concerning the burden of proof, the presumption of innocence, proof beyond a reasonable doubt, and other matters implicating federal constitutional requirements, must be binding upon the jury.

**3.** In the present case, no one has raised the question of whether Article 23, as interpreted in *Stevenson*, violates the Due Process Clause of the Fourteenth Amendment and/or the Jury Trial Clause of the Sixth Amendment, applicable to the states by virtue of the Fourteenth Amendment. In this connection, *see Sparf v. United States*, 156 U.S. 51, 64–107, 15 S.Ct. 273, 278–295, 39 L.Ed. 343, 347–363 (1895); *Stevenson v. State*, 289 Md. 167, 189–194, 423 A.2d 558, 570–572 (1980) (Eldridge, J. and Davidson, J., dissenting); and *State v. Adams*, 406 Md. 240, 299–301, 958 A.2d 295, 331–332 (2008) (Bell, C.J., Battaglia, J., and Eldridge, J., dissenting).

law of the crime for which there is a *sound basis.*" (Emphasis in original).

In *Montgomery,* the trial judge had instructed the jury that "*all*" of his instructions were advisory. This included instructions on the burden of proof in criminal cases, the requirement that the State prove guilt beyond a reasonable doubt, and the presumption that the defendant is innocent. This Court held in *Montgomery* that such instructions did not concern the "law of the crime" and that, therefore, they were binding upon the jury. We ordered a reversal of Montgomery's conviction and directed a new trial.

Several years after the *Stevenson* and *Montgomery* decisions, the United States Court of Appeals for the Fourth Circuit in a habeas corpus case, *Jenkins v. Hutchinson,* 221 F.3d 679 (4th Cir.2000), held that the state trial judge at Jenkins's criminal trial, by telling the jury that all of the judge's instructions were advisory, and particularly the proof beyond a reasonable doubt instruction, violated the defendant's right to due process under the Fourteenth Amendment. The Fourth Circuit also held that, under the circumstances, Jenkins's failure at his criminal trial to object to the advisory nature of the jury instructions did not constitute a waiver of the due process issue.

More recently, the majority of this Court in *State v. Adams,* 406 Md. 240, 256, 958 A.2d 295, 305 (2008), *cert. denied,* 556 U.S. 1133, 129 S.Ct. 1624, 173 L.Ed.2d 1005 (2009), a postconviction action, reiterated that, under Article 23, the jury's role as judge of the law in a criminal case is confined "to the law of the crime" and that "all other legal issues are for the judge alone to decide." (Internal quotation marks omitted). The majority in *Adams* also stated that the *Stevenson* interpretation of Article 23 "did not announce new law." *Ibid.* In addition, the *Adams* majority held that defense counsel's failure to object to the advisory nature of the jury instructions at Adams's criminal trial amounted to a waiver precluding a Fourteenth Amendment challenge to the instructions in the postconviction case.

Article 23, of the Maryland Declaration of Rights, as well this Court's opinions in *Stevenson, Montgomery,* and *Adams,* furnish the background for the issues that have been raised at various stages in the present case. Moreover, some of the issues in this case implicate the holding in *Stevenson,* reaffirmed in *Montgomery* and *Adams,* that the *Stevenson* interpretation of Article 23 did not set forth a new constitutional standard.

■ The issue of whether the *Stevenson* and *Montgomery* interpretation of Article 23 delineated a new constitutional standard is important in, *inter alia,* a postconviction case where the criminal trial occurred prior to the *Stevenson* opinion, where the judge at that trial instructed the jury generally that the judge's instructions on the law were advisory and not binding, and where the defendant did not object to the advisory nature of the judge's instructions. The "failure to object to a jury instruction ordinarily constitutes a waiver of any later claim that the instruction was erroneous," *Walker v. State,* 343 Md. 629, 645, 684 A.2d 429, 436 (1996), and cases there cited. Nevertheless, in cases governed by the waiver provisions of the Postconviction Procedure Act, § 7–106(c)(2) of that Act provides as follows:

"(c) *Effect of judicial decision that Constitution imposes new standard.*—(1) This subsection applies after a decision on the merits of an allegation of error or after a proceeding in which an allegation of error may have been waived.

"(2) Notwithstanding any other provision of this title, an allegation of error may not be considered to have been finally litigated or waived under this title if a court whose decisions are binding on the lower courts of the State holds that:

(i) the Constitution of the United States or the Maryland Constitution imposes on State criminal proceedings a procedural or substantive standard not previously recognized; and

(ii) the standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner's conviction or sentence."

In postconviction actions where the waiver provisions of the Postconviction Procedure Act are inapplicable, as well as in direct appeals from criminal convictions, our decisions have adopted and applied a principle similar to that embodied in § 7–106(c)(2). Numerous cases in this Court have held that the failure to raise an issue at trial was not a waiver of the issue when there was a relevant post-trial United States Supreme Court or Maryland Court of Appeals ruling changing the applicable legal standard. Many of these cases are collected and discussed in *State v. Adams, supra,* 406 Md. at 308–311, 958 A.2d at 336–338 (dissenting opinion). *See also, e.g., Franklin v. State,* 319 Md. 116, 122–123, 571 A.2d 1208, 1210–1211 (1990); *State v. Colvin,* 314 Md. 1, 25, 548 A.2d 506, 517–518 (1988); *State v. Evans,* 278 Md. 197, 211, 362 A.2d 629, 637 (1976).[4]

In the case at bar, in Part V of this opinion, we shall hold that the *Stevenson* and *Montgomery* opinions substantially changed the state constitutional standard embodied in Article 23. Accordingly, failure to object to advisory only jury instructions in criminal trials prior to *Stevenson* will not constitute a waiver.

## II.

In July 1976, the petitioner Merle Unger was indicted in the Circuit Court for Washington County on one count of felony murder, one count of armed robbery, and two counts of using a handgun in the commission of a felony. The charges were based upon the armed robbery of a store in Hagerstown,

---

**4.** In *Squire v. State,* 280 Md. 132, 368 A.2d 1019 (1977), this Court held that the principle was applicable when the Supreme Court case changing the legal standard was rendered four days *before* the defendant Squire's trial rather than after the trial. We held that defense counsel's failure to object to a jury instruction, which was legally incorrect under the just decided Supreme Court case, would not be a fatal waiver. Because of the erroneous instruction, we ordered a new trial.

Maryland. During the robber's escape, he was pursued by an officer of the Hagerstown Police Force. While pursuing the robber, the officer was shot and later died in a hospital. The case was removed to the Circuit Court for Talbot County, and was tried before a jury from November 22, 1976, through November 24, 1976.

After the jury was selected at Unger's trial, the trial judge began to give the jury instructions, stating (emphasis added):

"Now, Mr. Foreman, and Ladies and Gentlemen of the Jury, it is now the duty of the Court to instruct you on the law applicable generally to criminal cases. Under the Constitution of Maryland, the jury in a criminal case is the Judge of the Law as well as the facts. Therefore, *anything which I may say about the law, including any instructions which I may give you, is merely advisory and you are not in any way bound by it. You may feel free to reject my advice on the law* and to arrive at your own independent conclusions."

After the above-quoted instruction, the courtroom clerk realized that the jury had not been sworn, so the trial judge interrupted his instructions for the courtroom clerk to swear the jury. Following the swearing of the jury, the judge resumed his instructions, repeating the above-quoted instruction as follows (emphasis added):

"Mr. Foreman, Ladies and Gentlemen of the Jury, it is now the duty of the Court to instruct you on the law applicable generally to criminal cases. Under the Constitution of Maryland, the jury in a criminal case is the Judge of the Law as well as the facts. Therefore, *anything which I may say about the law, including any instructions which I may give you, is merely advisory and you are not in any way bound by it. You may feel free to reject my advice on the law* and to arrive at your own independent conclusions.

"You are to make the sole determination as to what the evidence is and what the law is. . . . * * * "

Shortly after giving the above-quoted instruction, the trial judge instructed the jury with regard to the burden of proof,

the reasonable doubt standard including a definition of reasonable doubt, and the presumption of innocence. The burden of proof, the reasonable doubt standard, and the presumption of innocence instructions were not, however, stated to be exceptions to the instruction that the jury was free to reject any of the judge's instructions on the law. Thus, under the trial judge's instructions, the jury could place the burden of proof upon the defendant, could utilize a different standard than reasonable doubt such as preponderance of the evidence, and could adopt a presumption of guilt.

On the third day of trial, after the close of evidence, the trial judge gave the jury the final instructions. He began as follows (emphasis added):

> "Mr. Foreman, Ladies and Gentlemen of the Jury, the time has now arrived for me to give you your final instructions on the law. These instructions are specific and pertinent to this case only, *but are advisory only. And are no more binding upon you than the preliminary instructions* that I have previously given you."

Unger's attorney did not object to any of the instructions concerning the role of the jurors as judges of the law.

In his final instructions, the trial judge did reiterate that, in order to find the defendant guilty, the jury "must be convinced beyond a reasonable doubt as herein before defined." The judge did not, however, repeat the definition of reasonable doubt.

The jury on November 24, 1976, found Unger guilty of felony murder, guilty of armed robbery, and guilty of using a handgun in the commission of each of these felonies. On December 2, 1976, the trial judge sentenced Unger to the following terms of imprisonment: life imprisonment for felony murder, 20 years for armed robbery, 15 years for using a handgun in the commission of murder, and 5 years for using a handgun in the commission of armed robbery. The sentences were to run consecutively to each other.

Unger appealed to the Court of Special Appeals which, in an unreported opinion, affirmed the judgments for felony murder

and use of handgun in the commission of murder. The intermediate appellate court, however, reversed the judgments for armed robbery and the dependent offense of using a handgun in the commission of armed robbery.[5] This Court in November 1977 denied Unger's petition for a writ of certiorari. *Unger v. State*, 281 Md. 745 (1977).

Unger, on August 9, 1995, filed in the Circuit Court for Talbot County a petition under the Maryland Uniform Post-conviction Procedure Act, § 7–101 *et seq.* of the Criminal Procedure Article. Five months later, Unger moved to withdraw this petition without prejudice, and his motion was granted by the Circuit Court.

On December 4, 1996, Unger, acting without an attorney, began the present action by filing in the Circuit Court for Talbot County another petition under the Postconviction Procedure Act. After a series of postponements, the postconviction case was, on December 4, 1997, transferred to the Circuit Court for Washington County. No hearings on the petition occurred for several years, "presumably because Petitioner was incarcerated in Florida," according to the judge in the postconviction case.

Unger, represented by counsel, filed in the Circuit Court for Washington County, on May 1, 2006, an "amended/supplemental" petition for postconviction relief, and a hearing on the petition was held on December 8, 2006, before the Circuit Court. This was three days after the Court of Special Appeals filed its opinion in *State v. Adams*, 171 Md.App. 668, 912 A.2d 16 (2006).[6]

In *State v. Adams*, the defendant Adams had been convicted of several criminal offenses in a jury trial on December 3–7,

---

5. See *State v. Frye*, 283 Md. 709, 393 A.2d 1372 (1978), and *Newton v. State*, 280 Md. 260, 373 A.2d 262 (1977), holding that separate convictions and sentences cannot be imposed for felony murder and the underlying felony where both charges arose from the same act or transaction.

6. This Court later reversed, for the most part, the judgment of the Court of Special Appeals, *State v. Adams, supra*, 406 Md. 240, 958 A.2d 295.

1979. In a later proceeding under the Postconviction Procedure Act, the Circuit Court in 2005 granted Adams a new trial. The Circuit Court decided, *inter alia,* that the trial court's jury instructions at the 1979 trial deprived Adams of due process. The court held that telling the jury that all of the judge's instructions as to the law were advisory, that the instructions were not binding upon the jury, and that they could be disregarded by the jury, violated the Due Process Clause of the Fourteenth Amendment. The Circuit Court in Adams's postconviction case also held that defense counsel's failure to object to the instruction that all of the instructions were merely advisory, did not constitute a waiver. The Court of Special Appeals in *Adams* granted the State's application for leave to appeal and affirmed the Circuit Court's judgment, agreeing that "the advisory jury instructions given [in 1979] in this case violated [Adams's] right to due process." *Adams,* 171 Md.App. at 682, 912 A.2d at 24. With regard to defense counsel's failure to object to the "advisory only" jury instructions, the Court of Special Appeals held that several cases after Adams's trial "materially changed the law governing the constitutionality of the advisory jury instruction, thus excusing any waiver." *Ibid.*

At the December 8, 2006, postconviction hearing in Unger's case, the principal matter discussed among the judge and the attorneys was the impact of the Court of Special Appeals' decision in *Adams,* rendered three days earlier. Thereafter, the Circuit Court on March 16, 2007, filed an order vacating Unger's 1976 convictions and granting Unger a new trial. In an opinion also filed on March 16th, the Circuit Court reviewed the *Stevenson, Montgomery,* and Court of Special Appeals' *Adams* opinions, as well as the Fourth Circuit's opinion in *Jenkins v. Hutchinson, supra,* 221 F.3d 679. The Circuit Court concluded that, because of the jury instructions at Unger's trial, he had been denied due process of law guaranteed by the Fourteenth Amendment. As to the State's argument that the federal constitutional issue was waived because of counsel's failure at Unger's trial to object to the

"advisory" nature of the instructions, the Circuit Court concluded that there had been no waiver.

Subsequently, the Circuit Court filed a supplemental opinion dealing with other issues that had been raised in Unger's petition for postconviction relief. *See* Maryland Rule 4–407(a). In his petition, Unger claimed that trial counsel at his 1976 trial and appellate counsel at his 1977 appellate proceedings had rendered ineffective assistance in several respects. None of the allegations of ineffective assistance related to the advisory nature of the jury instructions. One of the allegations was that trial counsel in 1976 was ineffective for not requesting a jury instruction, explaining reasonable doubt, at the close of the evidence. The Circuit Court's supplemental opinion examined each allegation of ineffective assistance by counsel and held that neither trial counsel nor appellate counsel had rendered ineffective assistance for the reasons alleged.

On April 16, 2007, the State filed in the Court of Special Appeals an application for leave to appeal. Unger responded by filing in the intermediate appellate court an opposition to the State's application and a conditional cross-application for leave to appeal.

While the State's application and Unger's conditional cross-application for leave to appeal were pending in the Court of Special Appeals, this Court on October 15, 2008, filed its opinion in *State v. Adams, supra,* 406 Md. at 256–282, 958 A.2d at 305–321, which reversed the relevant portion of the Court of Special Appeals' judgment. The majority in *Adams* held, *inter alia,* that defense counsel's failure at Adams's 1979 trial to object to the trial court's giving of "advisory" and non-binding jury instructions, and counsel's failure to raise the issue on direct appeal, constituted a waiver and precluded postconviction relief. Because Unger's attorney at his 1976 trial did not object to the trial judge's telling the jury that the judge's instructions were advisory and not binding, and because the issue was not raised on direct appeal, this Court's decision in *Adams* completely undercut the basis for the

Circuit Court's judgment vacating Unger's 1976 convictions and granting him a new trial.

In November 2008, Unger filed in the Court of Special Appeals a "Supplement" to his opposition to the State's application for leave to appeal and to his conditional cross-application for leave to appeal. In the Supplement, Unger argued, in light of the Court of Appeals' majority opinion in *Adams*, that during Unger's 1976

> "trial, defense counsel reasonably should have objected . . . to the 'advisory only' jury instructions. Consequently, [Unger's] trial attorney performed deficiently by not objecting to the unconstitutional instructions."

The Court of Special Appeals on July 6, 2009, filed an unreported opinion holding as follows:

> "Unger did not object to the advisory instructions given in his case . . . [U]nder the holding [of the Court of Appeals] in *State v. Adams, supra*, [Unger] waived his right to receive post conviction relief on the matter."

With regard to Unger's cross-application for leave to appeal, the Court of Special Appeals disagreed with Unger's position on the merits, saying:

> "Mr. Unger has filed a cross-application complaining about the hearing judge's denial of relief on another allegation. . . . [The allegation] was a claim of ineffective assistance of counsel. That allegation was premised on the timing of the trial judge's [reasonable doubt] instruction. The problem with the . . . instruction was that the trial judge gave the instruction at the beginning of the trial but did not re-new it at the close of all the evidence. In 1976, when the trial was held, this practice was considered proper. In 1980, the Court of Appeals, in the case of *Lansdowne v. State*, 287 Md. 232 [412 A.2d 88] (1980), ruled that a reasonable doubt instruction must be given at the close of all of the evidence and it is error not to do so. Mr. Unger argues that trial counsel's failure to have objected to the trial judge's failure to give the reasonable doubt instruction at the end of all of the evidence was ineffective representation. Courts should not, aided by hindsight, second guess

counsel's decisions. *Gilliam v. State,* 331 Md. 651, 666 [629 A.2d 685] (1993), *cert. denied,* 510 U.S. 1077 [114 S.Ct. 891, 127 L.Ed.2d 84] (1994). Counsel's actions must be judged based on the law as it existed at the time the questioned action was taken. *Wiggins v. State,* 352 Md. 580, 604 [724 A.2d 1], *cert. denied,* 528 U.S. 832 [120 S.Ct. 90, 145 L.Ed.2d 76] (1999). At the time of Mr. Unger's trial, it was considered proper to give the reasonable doubt instruction only at the beginning of the trial. Consequently, trial counsel was not ineffective for failing to have objected that the instruction was not given at the close of evidence."

The Court of Special Appeals failed to mention the Supplement to Unger's cross-application. As previously pointed out, Unger argued in the Supplement that, at his 1976 trial, defense counsel's representation was also ineffective because counsel failed to object to the "advisory only" jury instructions. The Court of Special Appeals' judgment granted the State's application for leave to appeal and vacated the postconviction trial court's order granting a new trial. The judgment "denied" Unger's cross-application for leave to appeal.

Unger filed in this Court a petition for a writ of certiorari, arguing that the trial judge's instructions at Unger's 1976 trial violated Unger's right to due process of law because, *inter alia,* they "empowered jurors to ignore the law, including the reasonable doubt standard" and "freed them to disregard the constitutional requirement that the State prove Petitioner's guilt beyond a reasonable doubt." (Unger's certiorari petition at 9). In his petition, Unger discussed this Court's waiver holding in *State v. Adams, supra,* and argued that "the Court's reasoning in *Adams* demonstrates that Petitioner's trial attorney performed deficiently by failing to object to the unconstitutional, 'advisory only' instructions in this case" (*id.* at 10). Unger also argued that the attorney at his 1976 trial rendered ineffective assistance by not objecting to the trial judge's failure to define or explain reasonable doubt in the instructions given after the close of evidence (*id.* at 14).[7]

---

7. Because we shall rule in Unger's favor on other grounds, we need not and shall not reach the issue of ineffective assistance of counsel by

The State filed a motion to dismiss and an answer, arguing that the certiorari petition either should be dismissed for lack of jurisdiction or should be denied. The State did not, however, file a conditional cross-petition for certiorari. The State argued that the Court lacked jurisdiction over any issues concerning the alleged ineffective representation by counsel, raised in Unger's cross-application for leave to appeal, because of Maryland Code (1974, 2006 Repl.Vol.), § 12–202(1) of the Courts and Judicial Proceedings Article. Section 12–202 provides as follows (emphasis added):

"**§ 12–202. Exceptions.**

A review by way of certiorari may not be granted by the Court of Appeals in a case or proceeding in which the Court of Special Appeals has denied or granted:

(1) *Leave to prosecute an appeal in a post conviction proceeding;*

(2) Leave to appeal from a refusal to issue a writ of habeas corpus sought for the purpose of determining the right to bail or the appropriate amount of bail;

(3) Leave to appeal in an inmate grievance commission proceeding;

(4) Leave to appeal from a final judgment entered following a plea of guilty in a circuit court; or

(5) Leave to appeal from an order of a circuit court revoking probation."

In addition, the State asserted that Unger's contention, that trial counsel in 1976 rendered deficient representation by not objecting to the "advisory only" jury instructions, was never presented to the postconviction court and, therefore, was waived. The State also argued that, if the issue was not waived, Unger's trial counsel's representation was not deficient.

This Court granted Unger's certiorari petition, *Unger v. State*, 411 Md. 355, 983 A.2d 431 (2009). Sometime after

---

counsel's not objecting to the trial judge's failure to define or explain "reasonable doubt" at the close of the evidence.

granting the certiorari petition, we ordered that the parties brief and the argue the issue raised in the State's motion to dismiss, namely whether we had jurisdiction in light of § 12–202(1) of the Courts and Judicial Proceedings Article. We shall deny the State's motion to dismiss, vacate the judgment of the Court of Special Appeals, and order an affirmance of the Circuit Court's judgment.

## III.

The State's argument, that we lack jurisdiction over the issues that were raised in Unger's cross-application for leave to appeal, is based on the Court of Special Appeals' denial of Unger's cross-application and on § 12–202(1) of the Courts and Judicial Proceedings Article. Section 12–202(1), quoted in Part II above, precludes our exercise of certiorari jurisdiction where "the Court of Special Appeals has denied or granted . . . [l]eave to prosecute an appeal in a post conviction proceeding. . . ." The State claims that the Court of Special Appeals' denial of Unger's application for leave to appeal brings this case within § 12–202(1). There are two answers to the State's argument, either one of which compels the rejection of the argument.

First, Unger's cross-application for leave to appeal was entirely unnecessary and, as a technical matter, was improper. Instead of treating it as a cross-application for leave to appeal, it should be viewed simply as a statement of alternative arguments for affirmance in the State's appeal. The reason for this is that a litigant is not, under Maryland law, entitled to appeal from a judgment which is wholly in his or her favor. *See Bowen v. Annapolis*, 402 Md. 587, 618, 937 A.2d 242, 260 (2007).[8] The only substantive relief which Unger sought in his

---

8. In addition to *Bowen v. Annapolis*, numerous cases in this Court have held that a cross-appeal by the prevailing party was improper because a party is not entitled to appeal from a *judgment* wholly in his or her favor, regardless of what may have been said by the trial judge in an opinion or with respect to alternative grounds. *See, e.g., Rush v. State*, 403 Md. 68, 103, 939 A.2d 689, 709 (2008) ("Although Rush could not

amended postconviction petition was for the Circuit Court to "Grant[ ] a new trial and new sentencing." The judgment of the Circuit Court vacated the 1976 judgments and ordered a new trial. This judgment was entirely in Unger's favor. As discussed in Part IV A of this opinion, *infra*, the arguments made in Unger's cross-application were properly arguments for affirming the Circuit Court's judgment on alternative grounds. Section 12–202 has no application to an appellee's arguments for affirming a judgment on alternative grounds.

█ Second, even if a cross-application for leave to appeal were necessary for Unger's arguments to be considered on appeal, the judgment of the Court of Special Appeals in this case would not come within the ambit of § 12–202. In *Williams v. State*, 292 Md. 201, 438 A.2d 1301 (1981), this Court traced the history of § 12–202 and held (292 Md. at 210–211, 438 A.2d at 1305):

> "[T]he limitation upon this Court's jurisdiction set forth in § 12–202 of the Courts and Judicial Proceedings Article relates only to the action of the Court of Special Appeals in granting or denying an application for leave to appeal. Except for the nonreviewability of that specific action, we have jurisdiction over the type of cases listed in § 12–202 to the extent that such jurisdiction is conferred by § 12–201 or other statutory provisions. Therefore, in the present case, although we may not review the Court of Special Appeals' exercise of discretion in granting the State's application for

file a 'cross-appeal,' she was entitled to raise the ... issue in the State's appeal, in order to defend the [trial court's] ruling on an alternative ground"); *Wolfe v. Anne Arundel County*, 374 Md. 20, 25 n. 2, 821 A.2d 52, 55 n. 2 (2003) ("We note that the ... cross-appeal was improper. * * * [O]ne may not appeal or cross-appeal from a judgment wholly in his favor. * * * [T]hat party may, as an appellee and without taking a cross-appeal, argue as a ground for affirmance the matter that was" the subject of the cross-appeal); *Montrose Christian School v. Walsh*, 363 Md. 565, 577–578 n. 3, 770 A.2d 111, 118 n. 3 (2001); *Insurance Commissioner v. Equitable*, 339 Md. 596, 612 n. 8, 664 A.2d 862, 870 n. 8 (1995); *Paolino v. McCormick & Company*, 314 Md. 575, 579, 552 A.2d 868, 870 (1989); *Offutt v. Montgomery Co. Bd. of Ed.*, 285 Md. 557, 564 n. 4, 404 A.2d 281, 285 n. 4 (1979).

leave to appeal, *we are authorized to review that court's decision on the merits....* " (Emphasis added).

The same is true where the Court of Special Appeals denies or dismisses an application for leave to appeal but goes on to rule on the merits or on the viability of the appeal or the status of a party. For example, *Grayson v. State,* 354 Md. 1, 728 A.2d 1280 (1999), involved applications for leave to appeal in two cases under the Postconviction Procedure Act. In one case the Court of Special Appeals denied leave to appeal, and in the other case the Court of Special Appeals "dismissed" the application for leave to appeal. Nevertheless, in both cases the Court of Special Appeals went on to rule upon the viability of the postconviction actions. This Court issued writs of certiorari in both cases and held that we had jurisdiction notwithstanding § 12–202 of the Courts and Judicial Proceedings Article. We explained (354 Md. at 12, 728 A.2d at 1285):

> "The Court of Special Appeals' decisions in the two cases at bar were not simply discretionary determinations that there should be no appeals. Rather, the Court of Special Appeals decided the merits of an issue raised by both Grayson and Jackson, namely whether the instant petitions were allowable under [the Postconviction Procedure Act]. Despite the insertion of the sentences stating that the applications for leave to appeal were denied, the intermediate appellate court did not simply exercise its discretionary authority not to entertain appeals. Instead, the Court of Special Appeals in both cases held that the post-conviction petitions were not allowable as a matter of law."

Most recently, in *Stachowski v. State,* 416 Md. 276, 6 A.3d 907 (2010), we reaffirmed our prior holdings that this Court does not have certiorari jurisdiction where the Court of Special Appeals simply denies or grants leave to appeal and goes no farther, but that we do have jurisdiction where the Court of Special Appeals, in addition to denying or granting leave to appeal, rules upon the merits or viability of the appeal or the rights or status of a party. *See also, e.g., Cianos v. State,* 338 Md. 406, 407, 659 A.2d 291, 293 (1995); *McElroy v. State,* 329 Md. 136, 145, 617 A.2d 1068, 1073 (1993); *Sherman v. State,*

323 Md. 310, 311, 593 A.2d 670, 670 (1991); *Jourdan v. State,* 275 Md. 495, 506 n. 4, 341 A.2d 388, 394–395 n. 4 (1975).

In the case at bar, if a cross-application for leave to appeal were necessary for appellate consideration of Unger's alternative arguments, (and it was not necessary), the Court of Special Appeals ruled upon the merits of Unger's cross-application even though the appellate court purported to deny the application. Consequently, § 12–202(1) would not deprive this Court of jurisdiction.

## IV.

In the Court of Special Appeals and in this Court, Unger maintained that, in light of this Court's decision in *State v. Adams, supra,* 406 Md. 240, 958 A.2d 295, defense counsel at Unger's 1976 trial rendered ineffective assistance by not objecting to the advisory and non-binding nature of the trial judge's jury instructions. The State and Judge Harrell in dissent argue that Unger waived this particular claim of defense counsel's ineffective assistance because the issue was not raised in the postconviction trial court. For several reasons, this "waiver" argument lacks merit. We shall discuss two of those reasons.

## A.

Most importantly, the State overlooks the fact that Unger prevailed in the postconviction trial court. Unger's 1976 convictions were vacated; he was awarded a new trial, and he was the appellee on appeal. The State's and dissent's argument is inconsistent with the principle, reiterated recently by Judge Adkins for the Court in *State v. Cates,* 417 Md. 678, 691–692, 12 A.3d 116, 124 (2011), that an appellee is " 'ordinarily *entitled* to assert any ground shown by the record for upholding the trial court's decision even though the ground was not relied on by the trial court and *was perhaps not raised in the trial court by the parties,*' " quoting *Grant v. State,* 299 Md. 47, 53 n. 3, 472 A.2d 459, 462 n. 3 (1984) (emphasis added). This principle is fully applicable in post-

conviction cases. *See, e.g., State v. Thomas,* 325 Md. 160, 176, 599 A.2d 1171, 1178 (1992).

■ The *Cates* opinion, quoting *Robeson v. State,* 285 Md. 498, 502, 403 A.2d 1221, 1223 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980), also noted an exception to the above-mentioned principle where the case has been decided by an intermediate appellate court and this Court has granted a certiorari petition. In that situation, the principle is applicable only if the issue was raised in the certiorari petition or a cross-petition or an order by this Court. *See also Parker v. State,* 402 Md. 372, 398, 936 A.2d 862, 878 (2007) ("The rule, permitting an affirmance on any ground adequately shown by the record, would also be applicable [in this Court] where ... the appellee" raises the ground in a petition or cross-petition for certiorari); *Wynn v. State,* 351 Md. 307, 322, 718 A.2d 588, 595 (1998), quoting *State v. Lancaster,* 332 Md. 385, 402 n. 12, 631 A.2d 453, 462 n. 12 (1993) (" 'In a case before us which has been decided by the Court of Special Appeals, the principle that a trial court will be affirmed for any reason adequately shown by the record is applicable only if the ground was presented in a petition for a writ of certiorari' "); *Temoney v. State,* 290 Md. 251, 262 n. 8, 429 A.2d 1018, 1023–1024 n. 8 (1981) (The rule concerning affirmance on an alternate ground "is as fully applicable in this Court as in the Court of Special Appeals," if the ground "is encompassed within a petition for certiorari"). In the case at bar, the issue was presented in Unger's certiorari petition.[9]

---

9. There are a few other exceptions to the principle that an appellate court will affirm a trial court on any ground adequately shown by the record, none of which is applicable in the present case. For example, in reviewing a grant of summary judgment, " 'Maryland appellate courts, as a general rule, will consider only the grounds upon which the [trial] court relied in granting summary judgment.' " *Eid v. Duke,* 373 Md. 2, 10, 816 A.2d 844, 849 (2003), quoting *Lovelace v. Anderson,* 366 Md. 690, 695, 785 A.2d 726, 729 (2001), and *PaineWebber v. East,* 363 Md. 408, 422, 768 A.2d 1029, 1036 (2001). When the "trial" is before an adjudicatory administrative agency, judicial review of the agency's decision is generally limited to the grounds raised before the agency or ruled upon by the agency. A reviewing court ordinarily will not affirm

█ As indicated in the *Cates* opinion quoted above, and as stated in numerous other opinions by this Court, an appellee's failure to raise an issue in the trial court does not preclude him or her from asserting that issue on appeal as a ground for affirming the trial court. *See Offutt v. Montgomery Co. Bd. of Ed.*, 285 Md. 557, 563, 404 A.2d 281, 285 (1979) ("We shall affirm the judgment below, although on a ground not relied upon by the circuit court and not suggested by the parties"). *See also, e.g., Dorsey v. Bethel A.M.E. Church*, 375 Md. 59, 68–69, 825 A.2d 388, 393 (2003); *State v. Lancaster, supra*, 332 Md. at 402 n. 12, 631 A.2d at 462 n. 12.

Recently, Judge Greene for the Court in *Elliott v. State*, 417 Md. 413, 435, 10 A.3d 761, 773 (2010), pointed out that the principle authorizing an affirmance on any ground adequately shown by the record is a "[w]ell-recognized *exception* [,] to [the] general principle" embodied in Maryland Rule 8–131(a). Rule 8–131(a) provides that an issue is ordinarily waived on appeal unless it was "raised in or decided by the trial court." *See Robeson v. State, supra*, 285 Md. at 502, 403 A.2d at 1223. ("One exception [to the principle that an issue ordinarily must be raised at trial for it to be considered on appeal] is ... where the record in a case adequately demonstrates that the decision of the trial court was correct, although on a ground not relied upon by the trial court and perhaps not even raised by the parties"); *Davis v. DiPino*, 337 Md. 642, 655, 655 A.2d 401, 407 (1995) ("*Robeson* and *Offutt* 'represent exceptions to the general rule that an appellate court will not address matters that were not raised or decided in the trial court,'"

an agency decision on a different ground even if the ground is adequately shown by the record. *People's Counsel v. Surina*, 400 Md. 662, 687 n. 26, 929 A.2d 899, 914 n. 26 (2007) (" '[J]udicial review of administrative decisions is limited to the issues or grounds dealt with by the administrative agency,' " quoting *Insurance Commissioner v. Equitable*, 339 Md. 596, 634, 664 A.2d 862, 881 (1995)).

Because there are exceptions to the principle of affirming on an alternative ground, many of this Court's opinions use the word "ordinarily" in stating the principle.

quoting *County Council v. Offen,* 334 Md. 499, 509, 639 A.2d 1070, 1075 (1994)).[10]

Apart from the exceptions previously noted, this Court has consistently taken the position that an appellee is entitled to assert any ground adequately shown by the record for upholding the trial court's decision, even if the ground was not raised in the trial court, and that, if legally correct, the trial court's decision will be affirmed on such alternative ground. Our cases declining to uphold the trial court on an alternative ground are ones, in accordance with the above principle, where the record was not adequate or the ground was not legally correct. *See, e.g., Elliott v. State, supra,* 417 Md. at 434–435, 10 A.3d at 773–774; *Frederick v. Pickett,* 392 Md. 411, 424–425, 897 A.2d 228, 235–236 (2006); *Davis v. DiPino, supra,* 337 Md. at 655, 655 A.2d at 408.

It is noteworthy that the United States Supreme Court has long acknowledged that an appellate court will affirm a trial court's judgment on any ground adequately supported by the record. *See, e.g., United States v. Arthur Young,* 465 U.S. 805, 814 n. 12, 104 S.Ct. 1495, 1501 n. 12, 79 L.Ed.2d 826, 834 n. 12 (1984) ("our precedents establish that a prevailing party may urge any ground in support of the judgment, whether or not that ground was relied upon or even considered by the court below"); *Smith v. Phillips,* 455 U.S. 209, 215 n. 6, 102 S.Ct. 940, 945 n. 6, 71 L.Ed.2d 78, 85 n. 6 (1982) ("Respondent may, of course, defend the judgment below on any ground which the law and the record permit"); *United States v. New York Telephone Co.,* 434 U.S. 159, 166 n. 8, 98 S.Ct. 364, 369 n. 8, 54 L.Ed.2d 376, 385 n. 8 (1977) ("the prevailing party may defend a judgment on any ground which the law and record permit"); *Securities and Exchange Com. v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626, 633 (1943).

---

**10.** The dissenting opinion, in arguing that the principle of affirming on an alternative ground is an aspect of Rule 8–131, totally ignores the above-cited cases holding that the principle of affirming on an alternative ground is an *exception* to Rule 8–131(a).

As previously mentioned, the issue of defense counsel's alleged deficient performance at Unger's 1976 trial, based upon counsel's failure to object to the advisory nature of the trial judge's jury instructions, was raised in the Court of Special Appeals in a "Supplement" to Unger's application for leave to appeal, filed shortly after this Court's opinion in *State v. Adams*. The belated nature of filing the Supplement in the Court of Special Appeals, emphasized in the State's brief, has no bearing upon Unger's entitlement to rely upon the issue in this Court. In *Bowen v. Annapolis, supra*, 402 Md. at 618, 937 A.2d at 260, Judge Greene for the Court explained:

"In the most basic form, the City contends that because Petitioners did not present the Court of Special Appeals with sufficient argument of this issue, they may not now raise the issue before this Court. This argument ignores a basic rule of appellate jurisprudence: A party may not appeal a judgment wholly in its favor. *Paolino v. McCormick Co.*, 314 Md. 575, 579, 552 A.2d 868, 870 (1989). Petitioners received a favorable judgment from the Circuit Court and thus had no duty to raise this issue or any other issue before the intermediate appellate court. Rather, the duty to raise issues for appellate review belongs squarely with the aggrieved party...."

### B.

The State's waiver argument is unsound for another reason. In the context of this and similar cases, the issue of whether trial counsel rendered ineffective assistance by not objecting to the advisory nature of the jury instructions, and the issue of whether a challenge to the non-binding jury instructions was waived because of no objection, are so intertwined that they should be treated as a single issue for purposes of preservation.

It is a settled principle of Maryland procedure that, for purposes of preservation in various contexts, where the issue raised by a litigant is sufficiently interrelated with another issue not raised, the court will treat them as if both

issues were raised by the litigant. *See, e.g., Delphey v. Frederick*, 396 Md. 180, 196 n. 15, 913 A.2d 28, 37–38 n. 15 (2006) (A property owner asserted in this Court that the City in a condemnation action violated two statutes, although the property owner had previously raised only one. This Court considered both statutes, as the issue under one "is inextricably interrelated to" the issue under the other); *Ross v. Board of Elections*, 387 Md. 649, 659, 876 A.2d 692, 698 (2005) ("Where . . . two grounds are so interrelated that they cannot be properly considered as separate and distinct, the appellate court" will consider both even though only one ground was relied upon); *Melton v. State*, 379 Md. 471, 481 n. 6, 842 A.2d 743, 749 n. 6 (2004) (The State argued that one of petitioner's arguments had not been raised, but this Court considered it because it was "inextricably intertwined with" another argument raised by petitioner); *Jenkins v. College Park*, 379 Md. 142, 153, 840 A.2d 139, 145 (2003) ("Although [the issue] was not presented as a specific issue to this Court, it is inextricably intertwined with the issues presented to this Court," and the Court therefore considered it); *Eid v. Duke*, 373 Md. 2, 11, 816 A.2d 844, 849 (2003).

In this case, the ineffective assistance of counsel issue and the issue concerning waiver of a constitutional challenge to the non-binding jury instructions, are both dependent upon the question of whether the interpretation of Article 23 in the *Stevenson* and *Montgomery* majority opinions set forth a new state constitutional standard. If that interpretation did not constitute a new constitutional standard, as held in the *Stevenson, Montgomery* and *Adams* majority opinions, there would be a sound basis for arguing that Unger's trial counsel should have been aware of Article 23's limited scope, should have objected to the advisory nature of the instructions, and that, therefore, trial counsel's representation was deficient.

On the other hand, if the *Stevenson* and *Montgomery* interpretation of Article 23 did set forth a new state constitutional standard which was intended to be retroactive, Unger's trial counsel's failure to object to the non-binding nature of the jury instructions would not be a waiver under the principle

discussed in Part I of this opinion, and reflected in § 7–106(c)(2) of the Post Conviction Procedure Act and in this Court's opinions. Moreover, trial counsel's failure to object would not constitute a deficiency in representing Unger. A lawyer trying a criminal case 4½ years prior to *Stevenson* and *Montgomery* would not know that the non-binding nature of the jury instructions would be deemed erroneous under a new interpretation of Article 23 to be rendered in the future. Attorneys are not required to be clairvoyant.

The interrelationship of the two issues, *i.e.*, whether Unger waived the federal constitutional challenge to the jury instructions at his 1976 trial and whether counsel at that trial rendered deficient performance by not objecting to those jury instructions, is illustrated by the efforts of counsel and the courts below to follow the most recent appellate opinions relating to Article 23.

As earlier pointed out, several years after the *Stevenson* and *Montgomery* cases, the United States Court of Appeals for the Fourth Circuit in *Jenkins v. Hutchinson, supra,* 221 F.3d 679, held that a state trial judge's jury instructions, which, *inter alia,* allowed the jury to reject the reasonable doubt instruction required by the Fourteenth Amendment's Due Process Clause, was a violation of the Fourteenth Amendment. The United States Court of Appeals in *Jenkins* also held that defense counsel's failure to object to that jury instruction did not preclude a grant of relief.

Next, the Court of Special Appeals in *State v. Adams, supra,* 171 Md.App. at 704, 912 A.2d at 37–38, stating that "[w]e are guided by and base our holding on the reasoning in *Jenkins,*" held that a trial judge's telling the jury that all of the judge's instructions were advisory and may be disregarded was a violation of due process. The Court of Special Appeals further held that counsel's failure to object to the advisory nature of the instructions at Adams's 1979 trial was not a fatal waiver because subsequent cases "materially changed the law governing the constitutionality of the advisory jury instruction,

thus excusing any waiver." *Adams,* 171 Md.App. at 682, 912 A.2d at 25.

Three days after the Court of Special Appeals' opinion in *Adams,* the hearing in the present postconviction case occurred. The trial judge, following the most recent appellate cases at the time, *Adams* in the Court of Special Appeals and *Jenkins,* held that the advisory jury instructions violated Unger's Fourteenth Amendment rights and that there was no waiver. The postconviction trial court thus vacated Unger's 1976 convictions and ordered a new trial. There would have been no basis for Unger's attorney to have argued before the postconviction trial court that counsel's "waiver" at the 1976 trial, by failing to object to the advisory nature of the jury instructions, constituted deficient representation. As held in the then most recent appellate cases, there was no waiver.

While the *Unger* case was pending before the Court of Special Appeals, however, this Court in a 4–3 decision reversed the pertinent portion of the Court of Special Appeals' *Adams* opinion, held that *Stevenson* and *Montgomery* "did not announce new law," and held that counsel's failure to object to the advisory nature of the jury instructions at Adams's trial was a fatal waiver. *Adams,* 406 Md. at 256, 958 A.2d at 305. The majority decision in *Adams* changed, for *Unger's* counsel, the nature of the issue in *Unger* from waiver to one of inadequate representation by counsel because of the failure to object. Unger's counsel promptly raised that issue by filing a "Supplement" in the Court of Special Appeals.

It is obvious that, in the context of the present case, the waiver issue and the deficient representation of counsel issue are inextricably interrelated. For this reason also, there is no merit to the State's argument that Unger waived the issue of trial counsel's deficient representation in 1976 by not objecting to the advisory nature of the jury instructions.

Therefore, we do have before us the merits of the issue concerning trial counsel's alleged deficient representation of Unger at his 1976 trial, based on counsel's failure to object to the advisory nature of the jury instructions.

## V.

For the reasons set forth in Parts III and IV of the dissenting opinion in *State v. Adams, supra,* 406 Md. at 312–340, 958 A.2d at 339–356, some of which are reiterated below, we shall hold that the *Stevenson* and *Montgomery* opinions set forth a new interpretation of Article 23 and established a new state constitutional standard. Consequently, defense counsel's failure to object to the advisory nature of the trial judge's jury instructions at Unger's 1976 trial did not amount to deficient representation. Concomitantly, the lack of objection to the same jury instructions did not constitute a waiver under the previously discussed principle reflected in § 7–106(c)(2) of the Postconviction Procedure Act and in this Court's opinions.

The Maryland constitutional provision stating that juries are the judges of the law in "all criminal cases" was initially adopted in the Maryland Constitution of 1851, and it has continuously remained part of Maryland's constitutional provisions. The only substantive change in the provision occurred in 1950 when a constitutional amendment added the following language: "except that the Court may pass upon the sufficiency of the evidence to sustain a conviction."

From 1851 until 1980–1981, when *Stevenson* and *Montgomery* were decided, no opinion by this Court held, suggested or intimated that the constitutional provision making juries the judges of the law in criminal cases was "limited to deciding 'the law of the crime,' . . . as well as 'the legal effect of the evidence' " (*Stevenson,* 289 Md. at 178, 423 A.2d at 564), or was "limited" to resolving "a dispute as to the proper interpretation of the law of the crime for which there is a *sound basis* " (*Montgomery,* 292 Md. at 89, 437 A.2d at 657, emphasis in original). The majority in *Stevenson* took, out of context, the phrase "law of the crime" from *Wheeler v. State,* 42 Md. 563, 570 (1875), and the phrase "the legal effect of the evidence" from *Beard v. State,* 71 Md. 275, 280, 17 A. 1044, 1045 (1889), and inserted the prefatory language that the jury's "authority is limited to deciding." Neither *Wheeler* nor *Beard* states that the jury's "authority is limited to deciding" the law

of the crime, etc., and neither opinion even uses the word "limited" or its equivalent. Moreover, limiting the jury's Article 23 function to resolving "a dispute as to . . . the law of the crime for which there is a *sound basis,*" as *Montgomery* held, finds no support in this Court's opinions. The phrase "for which there is a sound basis" does not appear in any pre-*Stevenson/Montgomery* opinion of this Court dealing with Article 23.

An examination of this Court's opinions regarding Article 23, rendered prior to *Stevenson* and *Montgomery,* demonstrates that Maryland juries had a broad function in deciding the law in criminal cases. There were only two court-created exceptions to juries being the judges of the law in criminal cases. The two exceptions under this Court's opinions were (1) deciding the constitutionality of statutes enacted by Congress or the Maryland General Assembly and (2) rulings on the admissibility of evidence. Furthermore, cases in this Court prior to *Stevenson* took the position that the "presumption of innocence" instruction, the "beyond a reasonable doubt" instruction, and other instructions implicating federal constitutional requirements, were only "advisory."

The first case discussing the provision which became Article 23 was *Franklin v. State,* 12 Md. 236 (1858). The conviction in *Franklin* was reversed because of a defective indictment. Justice Bartol delivered the opinion of the Court (12 Md. at 249–250), which agreed in dicta with a concurring opinion by Chief Justice LeGrand (12 Md. at 245–246) that the constitutional provision making juries the "judges of the law" in criminal cases did not authorize the jury to decide the constitutionality of an Act of Congress or of the State Legislature. The *Franklin* opinion did not discuss or recognize any other exception to the provision making juries the judges of the law in criminal trials. Several subsequent opinions of this Court also recognized the exception for a ruling on the constitutionality of a statute enacted by Congress or by the Maryland General Assembly, although these opinions did not embrace any other exceptions. *See, e.g., Hitchcock v. State,* 213 Md. 273, 280–284, 131 A.2d 714, 718–719 (1957); *Hopkins v. State,*

193 Md. 489, 497–498, 69 A.2d 456, 459–460 (1949), *appeal dismissed*, 339 U.S. 940, 70 S.Ct. 797, 94 L.Ed. 1357 (1950); *Slansky v. State*, 192 Md. 94, 105, 63 A.2d 599, 603 (1949); *Esterline v. State*, 105 Md. 629, 636–637, 66 A. 269, 272 (1907). It is important to point out that this exception was confined to the validity of statutes enacted by Congress or the General Assembly. No pre-*Stevenson* case in this Court made an exception for other types of constitutional issues.

Several cases have recognized the admissibility of evidence as an exception to the constitutional provision making juries the judges of the law in criminal cases, without recognizing any other exception. These include *Wheeler v. State, supra,* and *Beard v. State, supra,* relied on in *Stevenson. See also Lewis v. State,* 285 Md. 705, 723–724, 404 A.2d 1073, 1083 (1979); *Jackson v. State,* 180 Md. 658, 664, 26 A.2d 815, 818 (1942); *Dick v. State,* 107 Md. 11, 17–18, 68 A. 286, 288 (1907); *Bloomer v. State,* 48 Md. 521, 539 (1878); and *Broll v. State,* 45 Md. 356, 360 (1876).[11] Two opinions of this Court recognized both the exception for rulings on the admissibility of evidence and the exception for deciding the constitutionality of Acts of Congress and statutes enacted by the General Assembly. *See Wilson v. State,* 239 Md. 245, 254–255, 210 A.2d 824, 827–829 (1965); *Giles v. State,* 229 Md. 370, 383, 183 A.2d 359, 365 (1962), *appeal dismissed,* 372 U.S. 767, 83 S.Ct. 1102, 10 L.Ed.2d 137 (1963).

Until the *Stevenson* case in 1980, this Court's opinions regularly emphasized the breadth of the jury's function of deciding the law in criminal cases. Thus in *Dillon v. State,* 277 Md. 571, 580, 357 A.2d 360, 366 (1976), decided about six months before Unger's trial, Judge O'Donnell stated (emphasis added):

---

**11.** In a sense, the admissibility of evidence is not really an "exception" to the jury being the judge of the law. The function of the jury in deciding what the law is occurs after the evidentiary portion of the trial. That function does not begin until the case is submitted to the jury. Rulings on the admissibility of evidence, however, are normally earlier, during the evidentiary portion of the trial.

"Under 'our almost unique Constitutional provision *any instructions on the law* which the [trial] court may give' are purely advisory and the jury must be so informed. *Schanker v. State*, 208 Md. 15, 21, 116 A.2d 363, 366 (1955)." [12] *See also, e.g., Bruce v. State*, 218 Md. 87, 97, 145 A.2d 428, 433 (1958) (An "instruction on *every* essential question or point of law" is an "advisory" instruction) (emphasis added); *Esterline v. State, supra,* 105 Md. at 636, 66 A. at 272 ("Such instructions as [the trial court] may give are *merely advisory,* and may be disregarded by the jury") (emphasis in original); *Beard v. State, supra,* 71 Md. at 279–280, 17 A. 1044 ("Whenever, however, the judge has thought it proper to instruct, it has always been deemed necessary that he should be careful to put the instruction in an advisory form, so that the jury be left *entirely free* to find their verdict in accordance with their own judgment of the law, as well as the facts") (emphasis added); *Forwood v. State,* 49 Md. 531, 537 (1878) ("[I]n criminal cases, [the jurors] being judges of law and of the facts, they were not bound by *any* instructions of the court, but were only to give such instruction such weight as in their judgment they saw proper") (emphasis added); *Bloomer v. State, supra,* 48 Md. at 539 (" 'The jury then, being judges of law, as well as of fact in criminal cases, would not be bound by *any* instructions given by the court, but would be at *perfect liberty to utterly disregard them* ' ") (emphasis added).

Moreover, the cases in this Court prior to 1980, all holding that juries in criminal cases had the authority to decide almost all legal issues, included cases implicating constitutional rights. *See, e.g., Davis v. State,* 285 Md. 19, 33, 400 A.2d 406, 413

---

**12.** Judge O'Donnell's opinion did not mention any exceptions to the constitutional provision making juries the judges of the law in criminal cases. Many other opinions of this Court discussing the provision fail to mention any exceptions. *See Hardison v. State,* 226 Md. 53, 60–62, 172 A.2d 407, 411–412 (1961); *Brown v. State,* 222 Md. 290, 301–302, 159 A.2d 844, 850–851 (1960); *Bruce v. State,* 218 Md. 87, 97–98, 145 A.2d 428, 433–434 (1958); *Wilkerson v. State,* 171 Md. 287, 188 A. 813 (1937); *Klein v. State,* 151 Md. 484, 489–490, 135 A. 591 (1926); *Swann v. State,* 64 Md. 423, 1 A. 872 (1885); *Bell, alias Kimball v. State,* 57 Md. 108, 118–121 (1881); *Forwood v. State,* 49 Md. 531, 537 (1878).

(1979) (Burden of proof instruction was referred to as "the advisory jury instruction here"); *Bruce v. State, supra,* 218 Md. at 97–98, 145 A.2d at 433–434 (Presumption of innocence and reasonable doubt instructions were characterized as "advisory"); *Wilson v. State, supra,* 239 Md. at 254, 210 A.2d at 828 (The criminal conviction was reversed because the trial judge would not allow defense counsel to argue before the jury issues of search and seizure law and the law of arrest); *Slansky v. State, supra,* 192 Md. at 109, 63 A.2d at 606 (Prior to the 1950 constitutional amendment, the sufficiency of the evidence was for the jury, and not even the Court of Appeals could "pass upon ... the sufficiency of evidence to establish the crime charged"); *Wilkerson v. State,* 171 Md. 287, 289–290, 188 A. 813, 814 (1937) (A criminal conviction was reversed because the trial judge prohibited defense counsel from arguing a principle of self-incrimination law to the jury); *Klein v. State,* 151 Md. 484, 489, 135 A. 591, 593 (1926); *Dick v. State, supra,* 107 Md. at 17, 68 A. at 288.

The wording of Article 23 is very broad, providing that "[i]n the trial of *all criminal cases,* the Jury shall be the Judges of Law...." (Emphasis added). The only exception contained in the constitutional provision itself is that the court may pass upon the sufficiency of the evidence for the case to be submitted to the jury. As the cases reviewed in this opinion show, prior to *Stevenson* and *Montgomery,* the opinions of this Court largely construed Article 23 as it read.

In addition, Maryland Rule 756, which was in effect in 1976 at the time of Unger's trial, stated regarding jury instructions in criminal cases (emphasis added):

**"Rule 756. Advisory Instructions.**

 \* \* \*

b. *How Given.*

The court may and at the request of any party shall, give such advisory instructions to the jury as may correctly state the applicable law; the court may give its instructions either orally or in writing. The court need not grant any requested instruction if the matter is fairly covered by the instruc-

tions actually given. The court *shall in every case in which instructions are given* to the jury, instruct the jury that they are *the judges of the law* and that the *court's instructions are advisory only.*"

The Rule made no exceptions to the requirement that juries be told that they are the judges of the law. While the Rule was subsequently re-numbered, the above-quoted language remained the same until after the *Stevenson* and *Montgomery* opinions.

 Finally, the *Stevenson* and *Montgomery* opinions were intended by the Court in those cases to be fully retroactive. *Stevenson* and *Montgomery* were clearly intended to be retroactive because neither opinion purported to change the prior interpretation of Article 23. Apart from the Court's intention in *Stevenson* and *Montgomery,* the new interpretation of Article 23 set forth in those opinions was retroactive under our cases. It is a well-established principle of Maryland law that a new interpretation of a constitutional provision or a statute is fully retroactive if that interpretation affects the integrity of the fact-finding process. *See, e.g., State v. Colvin, supra,* 314 Md. at 24–25, 548 A.2d at 517–518; *Jones v. State,* 314 Md. 111, 549 A.2d 17 (1988); *State v. Evans, supra,* 278 Md. at 210, 362 A.2d at 637. A new interpretation of the jury's role in a criminal case certainly could have an impact on the fact-finding function. For example, a jury's novel view of the standard of proof clearly could change its conclusion based on the facts of the case. Accordingly, *Stevenson's* and *Montgomery's* interpretation of Article 23 applies retroactively.

In sum, the *Stevenson* and *Montgomery* opinions clearly held that "the Maryland Constitution [, in Article 23 of the Declaration of Rights,] impose[d] on State criminal proceedings a procedural or substantive standard not previously recognized." § 7–106(c)(2)(i) of the Criminal Procedure Article. Therefore, defense counsel's failure to object to the advisory nature of the jury instructions at Unger's 1976 trial did not constitute a waiver.

 Those portions of the Court's *Stevenson, Montgomery,* and *Adams* opinions, holding that the interpretation of Article 23 in *Stevenson* and *Montgomery* was not a new State constitutional standard, were erroneous and are overruled. While we recognize that, "under the doctrine of *stare decisis,* a court's previous decisions should not be lightly set aside," nevertheless "the rule of *stare decisis* is not an absolute." *State v. Green,* 367 Md. 61, 78–79, 785 A.2d 1275, 1285 (2001). This Court has not hesitated to overrule prior decisions which are clearly wrong. *See, e.g., Cure v. State,* 421 Md. 300, 320–322, 26 A.3d 899, 910–911 (2011) (The Court, in an opinion by Judge Harrell, overruled a prior decision of this court concerning waiver and adopted the position of the three dissenters in that prior case); *Harris v. Board of Education,* 375 Md. 21, 59, 825 A.2d 365, 388 (2003) (Overruling three prior cases and their progeny on the ground that the overruled cases had erroneously inserted in the Workers Compensation Act an additional requirement not included by the Legislature); *State v. Kanaras,* 357 Md. 170, 184, 742 A.2d 508, 516 (1999) (Overrules five prior decisions which had misinterpreted the Postconviction Procedure Act); *Owens–Illinois v. Zenobia,* 325 Md. 420, 470–471, 601 A.2d 633 (1992) (The Court overruled several cases relating to punitive damages on the ground that the "holdings were erroneous and were inconsistent with [prior] Maryland ... law"); *Townsend v. Beth.–Fair. Shipyard,* 186 Md. 406, 417, 47 A.2d 365, 370 (1946). As shown in this opinion, in the *Stevenson* and *Adams* dissenting opinions, and in numerous opinions of this Court prior to *Stevenson,* it is clear that *Stevenson* and *Adams* were wrongly decided and that portions of *Montgomery* were erroneous. Consequently, their "waiver" holdings are no longer valid.

It is undisputed that the trial judge's instructions at Unger's 1976 trial, telling the jury that all of the court's instructions on legal matters were "merely advisory," were clearly in error, at least as applied to matters implicating federal constitutional rights. Consequently, the post-conviction trial court correctly granted a new trial.

*MOTION TO DISMISS DENIED. JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY. COSTS TO BE PAID BY THE RESPONDENT.*

HARRELL and ADKINS, JJ., Concur and Dissent.

HARRELL, J., concurring and dissenting, in which ADKINS, J., joins.

Although I agree with the disposition in the Majority opinion of the State's motion to dismiss, I dissent otherwise. The Majority opinion ignores the long-standing principles of stare decisis and executes a relatively abrupt and unjustified about-face from our holding in *State v. Adams*, 406 Md. 240, 958 A.2d 295 (2008). The only thing that appears to have changed in the few intervening years between *Adams* and now is the composition of the Court. In addition, in order to overrule *Adams*, the Majority opinion exercises unwisely its discretion to decide waived contentions on the record of this case.

The Majority opinion concludes that our decisions in *Stevenson v. State*, 289 Md. 167, 423 A.2d 558 (1980), and *Montgomery v. State*, 292 Md. 84, 437 A.2d 654 (1981), "substantially changed the state constitutional standard embodied in Article 23" and, therefore, Unger's failure to object to the trial judge's advisory jury instructions was not a waiver under § 7–106(c)(2) of the Postconviction Procedures Act. *Unger v. State*, 427 Md. 383, 391, 48 A.3d 242, 246 (2012). The Majority opinion suggests further that Unger's ineffective assistance of counsel (for failure to object to the advisory jury instructions) claim and the waiver of his objection to the jury instructions by counsel's failure to object "are so intertwined that they should be treated as a single issue for purposes of preservation." Majority op. at 407, 48 A.3d at 256. I disagree with these declarations. For reasons to be explained, I would affirm the judgment of the Court of Special Appeals and hold, albeit on different grounds than the intermediate appellate

court, that Unger's objection was waived and that he failed to demonstrate that he received ineffective assistance of trial counsel.

## *FACTS*

Although redundant in certain respects to the Majority opinion's recitation of the facts, I shall render my own "take" on them, which places emphasis on certain aspects given no consideration or short shrift by the Majority opinion. Unger was indicted in the Circuit Court for Washington County on one count of felony murder, one count of robbery with a deadly weapon, and two counts of use of a handgun in the commission of a crime of violence. The case was removed for trial to the Circuit Court for Talbot County, where Unger, represented by counsel, was tried by a jury. The trial took place over 22–24 November 1976.

Immediately after jury selection, the trial court made certain preliminary remarks to the jury regarding a notion of the jury's role in the trial process popular in Maryland circa 1976:

> Now, Mr. Foreman, and Ladies and Gentlemen of the Jury, it is now the duty of the Court to instruct you on the law applicable generally to criminal cases. Under the Constitution of Maryland, the jury in a criminal case is the Judge of the Law as well as the facts. Therefore, anything which I may say about the law, including any instructions which I may give you, is merely advisory and you are not in any way bound by it. You may feel free to reject my advice on the law and to arrive at your own independent conclusions.

Realizing that the jury panel had not yet been sworn, the trial court interrupted its preliminary statement to the jury so the courtroom clerk could swear the panel. The court resumed its remarks thereafter, repeating that the jurors were the judges of the law and that the court's instructions as to the law were not binding upon them:

> Mr. Foreman, Ladies and Gentlemen of the Jury, it is now the duty of the Court to instruct you on the law applicable generally to criminal cases. Under the Constitu-

tion of Maryland, the jury in a criminal case is the Judge of the Law as well as the facts. Therefore, anything which I may say about the law, including any instructions which I may give you, is merely advisory and you are not in any way bound by it. You may feel free to reject my advice on the law and to arrive at your own independent conclusions.

In addition, the trial court provided the jury with an explanation of the "beyond a reasonable doubt" burden of proof borne by the State.

The State's case against Unger was summarized aptly by the Court of Special Appeals in its unreported opinion deciding his direct appeal from the convictions:

According to the evidence adduced at trial, on December 13, 1975, at approximately 9:00 p.m., a robber, wearing a CPO jacket and a ski mask, held up the owner of Kim's Corner General Store in Hagerstown, Maryland, taking all the money in the cash register, plus checks and currency carried by the owner. While the robbery was in progress, an off-duty member of the Hagerstown Police Force, Officer Daniel Donald Kline, entered the store. As the robber started to leave, the officer identified himself and ordered him to halt. The robber, however, continued through the door and into a passageway between two houses with the officer in pursuit.

Soon thereafter there were flashes of gunfire, and the officer staggered out of the passageway. An hour later the officer died in the hospital; he had been shot three times. Found at the scene were four .25 caliber shell casings, a .25 caliber handgun, and a ski mask. The bullets removed from the officer's body later proved to have been fired from the gun found at the scene. Maryland State Police canine dogs followed the scent of the ski mask to the cellar of a nearby house. There the troopers found [Unger] unconscious and badly wounded, wearing a navy blue CPO jacket. He had been shot with a .38 caliber bullet fired from the officer's service revolver. In [Unger's] pocket a large sum of money and checks were found, including a money order made payable to Kim's Corner.

The trial testimony reflected additionally that, following his arrest, Unger was treated in the intensive care unit of Washington County Hospital and then transferred to a private room for several days. During that time, Unger, during police questioning, waived his *Miranda*[1] rights on several occasions and made a number of incriminating statements, including admitting that the ski mask found in the alley next to Kim's Corner was his, acknowledging "his complicity in the robbery," and stating that he "did this thing." In total, during the presentation of its case, the State introduced 29 pieces of demonstrative evidence and called witnesses on approximately 32 occasions.

On the third day of trial, after the close of all of the evidence, the trial court gave its instructions to the jury. It began by reiterating that its instructions about the law were not binding:

> Mr. Foreman, Ladies and Gentlemen of the Jury, the time has now arrived for me to give you your final instructions on the law. These instructions are specific and pertinent to this case only, but are advisory only. And are no more binding upon you than the preliminary instructions that I have previously given you.

During its final instructions, the trial court did not repeat its earlier rendered definition of the reasonable doubt standard, instead referring the jury to its preliminary remarks. Unger's trial counsel did not object to the trial court's giving of any of the foregoing "advisory" jury instructions, nor did he request a reiterative explanation by the trial court at the close of the evidence of the meaning of reasonable doubt.

On 24 November 1976, the jury convicted Unger of felony murder, armed robbery, and use of a handgun in the commission of each of those offenses. The court sentenced Unger on 2 December 1976 to life in prison for felony murder, 20 years for armed robbery, five years for use of a handgun in the

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

commission of armed robbery, and 15 years for use of a handgun in the commission of murder.

Unger noted timely an appeal from his convictions, contending that (1) the statements he gave to police were inadmissible and (2) the conviction and sentence for both felony murder and robbery violated the prohibition against double jeopardy. In an unreported opinion, filed on 2 September 1977, the Court of Special Appeals affirmed Unger's convictions for felony murder and for use of a handgun in the commission of murder.[2]

Exhibiting considerable patience, Unger waited 19 years before filing a self-represented post-conviction petition in the Circuit Court for Talbot County. The matter was transferred to the Circuit Court for Washington County on 8 December 1997, but a hearing never was held on his sketchy petition. It remained pending until 1 May 2006, when Unger, now represented by counsel, filed an amended petition for post-conviction relief in the Circuit Court for Washington County, alleging, among other things,[3] that the trial court erred in telling

---

**2.** The intermediate appellate court reversed, however, Unger's conviction for armed robbery on the ground that the imposition of multiple punishments for felony murder and the underlying felony of armed robbery would violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. In addition, as Unger committed only one felony, the Court of Special Appeals reversed his conviction for use of a handgun in the commission of armed robbery.

**3.** Unger's amended petition contained a lengthy list of claims, which, according to him, entitled him to post-conviction relief in the form of a new trial. Specifically, Unger's amended petition alleged that:

(1) Unger's appellate counsel provided ineffective assistance by failing to raise on direct appeal an issue regarding an improper amendment of the charging document;
(2) Unger's appellate counsel provided ineffective assistance by failing to raise on direct appeal an issue concerning the chain of custody;
(3) Unger's trial counsel provided ineffective assistance by permitting witnesses to remain in the courtroom, thus rendering them unavailable to testify about the voluntariness of his confession;
(4) Unger's trial counsel provided ineffective assistance by failing to request a reasonable doubt instruction following the conclusion of the evidence;

the jury that its instructions regarding the law were merely "advisory." The post-conviction court held a hearing on Unger's amended petition on 8 December 2006, during which Unger presented no testimony. By memorandum opinion and order dated 16 March 2007, the post-conviction court vacated Unger's convictions and granted him a new trial, concluding that, under the Court of Special Appeals's then-recent decision in *State v. Adams*, 171 Md.App. 668, 912 A.2d 16 (2006), he had been denied due process as a result of the trial court's giving of unobjected-to "advisory" jury instructions at his trial.[4]

On 16 April 2007, the State filed with the Court of Special Appeals an application for leave to appeal from the post-conviction court's grant of a new trial to Unger. In response, Unger filed, on 4 May 2007, an opposition and a conditional cross-application for leave to appeal. In the conditional cross-application, Unger challenged the post-conviction court's rejection of the argument that his trial counsel was ineffective by failing to request that the trial court provide the jury with an explanation of reasonable doubt at the close of the evidence.[5]

---

(5) the trial judge instructed improperly the jury that his instructions were "advisory only" and not binding on them; and,
(6) the cumulative effect of trial counsel's errors prejudiced Unger's right to a fair trial.

4. In response, Unger filed a motion to alter or amend the judgment, observing that the post-conviction court granted a new trial based solely on the advisory jury instructions issue, but failed to rule on the other contentions in his amended petition, in violation of *State v. Borchardt*, 396 Md. 586, 914 A.2d 1126 (2007). Accordingly, on 30 April 2007, the post-conviction court issued a supplemental memorandum opinion in which it denied the remainder of Unger's claims.

5. In his conditional cross-application, as I read it, Unger contended that his trial counsel rendered ineffective assistance by failing to object to the trial court's failure to instruct the jury again on reasonable doubt following the close of the evidence. Unger's amended petition and the post-conviction court's ruling reflect, however, that Unger's claim in this regard was premised upon trial counsel's failure to request an explanation of the reasonable doubt standard after the close of the evidence. As such, I would consider Unger's claim in this regard to be framed properly as a challenge to trial counsel's failure to request that

Shortly after this Court issued its decision in *Adams,* 406 Md. at 240, 958 A.2d at 295, which reversed in part the judgment of the Court of Special Appeals, on which the post-conviction court in the present case relied in granting Unger a new trial, Unger filed, on 12 November 2008, a supplement to his opposition to the State's application for leave to appeal and his conditional cross-application for leave to appeal, contending that, under this Court's decision in *Adams,* Unger's trial counsel provided ineffective representation by failing to object to the advisory jury instructions that were given by the trial court.

On 6 July 2009, the Court of Special Appeals issued an unreported opinion in which it granted the State's application for leave to appeal and vacated the post-conviction court's order granting Unger a new trial, finding that, under this Court's decision in *Adams,* Unger's failure to object to the trial court's advisory jury instructions waived his right to post-conviction relief on that issue. The intermediate appellate court denied also Unger's conditional cross-application for leave to appeal based on his claim that his trial counsel rendered ineffective assistance by failing to request an explanation of reasonable doubt at the close of the evidence, explaining that, at the time of Unger's trial, it was considered proper to give the reasonable doubt instruction only at the beginning of trial.

### ANALYSIS

As noted at the outset of this concurring and dissenting opinion, I agree with the Majority opinion's conclusion to deny the State's motion to dismiss. My focus hereafter is on presenting why the Majority opinion errs and my view of the proper disposition of Unger's ineffective assistance of counsel claim. Unger contends that his trial counsel rendered ineffective assistance by (1) failing to object to the trial court's giving of advisory jury instructions, and (2) failing to request, at the

the trial court provide the jury with an explanation of the reasonable doubt standard.

close of the evidence, an explanation of the reasonable doubt standard. I conclude, with regard to his first contention, that Unger waived any possibility of post-conviction relief by virtue of failing to present his claim to the post-conviction court. With regard to Unger's second claim, I would hold that Unger failed to demonstrate that his trial counsel's failure to request an explanation of reasonable doubt at the close of the evidence resulted in prejudice to his defense.

### i. Trial Counsel's Failure to Object to Advisory Jury Instructions

The Majority opinion relies to some degree on our recent opinions in *State v. Cates,* 417 Md. 678, 12 A.3d 116 (2011), and *Elliott v. State,* 417 Md. 413, 10 A.3d 761 (2010), for the proposition that a convicted defendant in a criminal case is "ordinarily entitled to assert any ground shown by the record for upholding the trial court even though the ground was not relied on by the trial court and was perhaps not raised in the trial court by the parties," and, as such, Unger is entitled to have us reach the merits of the advisory-jury-instruction issue despite it being waived under § 7–106(b). (Emphasis and internal quotations and citations omitted.) The quotation from *Cates* (and the two other opinions utilizing this quoted passage—*State v. Bell,* 334 Md. 178, 187, 638 A.2d 107, 112 (1994), and *Grant v. State,* 299 Md. 47, 53, 472 A.2d 459, 462 (1984)) begins: "[a]n appellee . . . is *ordinarily* entitled to assert any ground . . . ." *Cates,* 417 Md. at 691–92, 12 A.3d at 124 (emphasis added). Invocation of the word "ordinarily" (in these cases and Rule 8–131(a)) indicates to me that this principle does not serve as an automatic entitlement to Unger to compel us to reach the merits of his advisory-jury-instruction claim, casting aside preservation principles. *See Bell,* 334 Md. at 187, 638 A.2d at 112 ("The use of the term . . . 'ordinarily' . . . impl[ies] that exceptions to these rules exist."). In fact, in *Bell,* the Court refused to address the merits of the question there. The Majority opinion here ignores the discretion involved in reaching its decision, proceeding as though

Unger is entitled to have us reach the ineffective assistance of counsel claim.

Although I conclude that Unger enjoys no "entitlement" compelling us to reach the merits of the waived advisory-jury-instruction issue, this Court made clear in *Adams,* 406 Md. at 269, 958 A.2d at 313, that we "possesses discretion to excuse a waiver, outside of § 7–106, in a post-conviction proceeding." The basis for excusing such a waiver, we pointed out, is Maryland Rule 8–131(a). *See Adams,* 406 Md. at 269, 958 A.2d at 313; *Bell,* 334 Md. at 190 n. 5, 638 A.2d at 113 n. 5 ("The concept of fairness is necessarily implicit in any 'entitlement' that may ordinarily exist for the appellee, and again, the matter ultimately rests in the discretion of the appellate court under Rule 8–131(a)."). Thus, threshold the issue becomes actually whether we, *exercising our discretion* under Rule 8–131(a), should choose to address this argument, although waived under § 7–106.

It is well settled that the primary purpose of Rule 8–131(a) is "to ensure fairness for all parties in a case and to promote the orderly administration of law," and that the Court's discretion should be exercised rarely and "should be exercised only when it is clear that it will not work an unfair prejudice to the parties or to the court." *Bell,* 334 Md. at 178, 181, 638 A.2d at 113 (internal citations omitted). To the touchstones of "fairness" and "prejudice," other jurisdictions have applied the doctrine of laches to bar postconviction claims coming many years after the asserted errors. *See, e.g., McCray v. State,* 699 So.2d 1366, 1368 (Fla.1997) (applying the doctrine of laches to bar a petitioner's claim of ineffective assistance of counsel made 15 years after trial, calling such a delay "an abuse of the judicial process," considering that, over time, "records are destroyed, essential evidence may become tainted or disappear, memories of witnesses fade, and witnesses may die or be otherwise unavailable"); *People v. Valdez,* 178 P.3d 1269, 1276 (Colo.App.2007); *Woodberry v. State,* 33 Kan. App.2d 171, 101 P.3d 727, 731 (2004). Although I do not rest my position on the applicability of the doctrine of laches in the present case, language from *Adams* is telling on this point:

A delay of twenty-four years before asserting his waived arguments . . . may be a testimonial to patience, but the delay poses a real potential for serious hardship and prejudice to the State's ability to mount a new prosecution. This delay is particularly inexcusable because "[a]s originally enacted in 1958, the [Post–Conviction Procedure] Act did not place any limit on the number of post conviction petitions which a petitioner was entitled to file." *Mason v. State*, 309 Md. 215, 217–18, 522 A.2d 1344, 1345 (1987).

406 Md. at 283–84, 958 A.2d at 322. This reasoning applies with comparable force to the present case to explain why I would decline to exercise discretion, under Md. Rule 8–131, to reach the merits of Petitioner's waived advisory-jury-instruction claim. Here, Unger waited 30 years after his conviction before activating a dormant petition for post-conviction relief. To say that the prosecution would be prejudiced presumptively by this decades-long delay would be an understatement. Accordingly, I would decline to exercise discretion under Md. Rule 8–131(a) to excuse the waiver that occurred by operation of § 7–106.[6]

---

**6.** Section 7–106 of the Criminal Procedure Article, entitled "Allegation of error," provides in pertinent part:

(b) Waiver of allegation of error.—

(1)(i) Except as provided in subparagraph (ii) of this paragraph, an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation:

1. before trial;
2. at trial;
3. on direct appeal, whether or not the petitioner took an appeal;
4. in an application for leave to appeal a conviction based on a guilty plea;
5. in a habeas corpus or coram nobis proceeding began by the petitioner;
6. in a prior petition under this subtitle; or
7. in any proceeding that the petitioner began.

(ii) 1. Failure to make an allegation of error shall be excused if special circumstances exist.

2. The petitioner has the burden of proving that special circumstances exist.

(2) When a petitioner could have made an allegation of error at a proceeding set forth in paragraph (1)(i) of this subsection but did not make an allegation of error, there is a rebuttable presumption that

In his amended petition for post-conviction relief, Unger, through counsel, claimed that his trial counsel rendered ineffective assistance (1) when counsel failed to request sequestration of witnesses who could have offered testimony relevant to the voluntariness of Unger's confession, and (2) when counsel failed to request that the trial court provide an explanation of the reasonable doubt standard at the conclusion of the evidence. Although Unger's amended petition alleged additionally that "[t]he trial judge improperly instructed the jury that his instructions were advisory only and not binding on them," he did not contend that his trial counsel rendered ineffective assistance by failing to object to the advisory jury instructions. Accordingly, in neither its 16 March 2007 memorandum opinion nor its 30 April 2007 supplemental memorandum opinion did the post-conviction court (nor could it) address the question of whether Unger's counsel was ineffective for failing to object to the trial court's advisory jury instructions.

In Unger's conditional cross-application for leave to appeal from the post-conviction court's judgment, he similarly did not raise any contention with regard to his trial counsel's alleged ineffectiveness for failing to object to the trial court's advisory jury instructions. Only after this Court issued its opinion in *Adams* did Unger allege, in his supplement to his conditional cross-application for leave to appeal, that his trial counsel provided ineffective representation by failing to object to the trial court's advisory jury instructions. In response to *Adams*, the holding of which, as noted by the Court of Special Appeals here, undermined significantly Unger's original con-

---

the petitioner intelligently and knowingly failed to make the allegation.

§ 7–106(b). Thus, § 7–106(b) establishes that, where a petitioner has the opportunity to raise a claim in his or her post-conviction petition, but fails to do so, the right to rely upon that issue in a subsequent appeal may be considered waived. *See Brown v. Warden of Md. Penitentiary*, 236 Md. 621, 622, 203 A.2d 905, 905 (1964) ("A third issue, that he was not informed of his right to appeal, was not raised below, and hence is not properly before us."); *Davis v. Warden of Md. Penitentiary*, 235 Md. 637, 639, 201 A.2d 672, 673 (1964) ("Claims first presented on application for leave to appeal are not properly before us for consideration.").

tention by finding that a defendant's failure to object to advisory jury instructions waives a future post-conviction claim alleging the error of such instructions, Unger shifted his position to allege, for the first time, that his trial counsel provided ineffective assistance by failing to object to the trial court's advisory jury instructions. Nonetheless, the Court of Special Appeals, in its unreported opinion, made no mention of whether Unger's trial counsel rendered ineffective assistance by failing to object to the trial court's advisory jury instructions.

It is clear that, by failing to raise in the post-conviction court his claim that his trial counsel rendered ineffective assistance by failing to object to the trial court's giving of advisory jury instructions, Unger waived, pursuant to § 7–106, any possible post-conviction relief based upon that issue. As such, I would not consider the merits of this aspect of Unger's ineffective assistance of counsel claims.

The Majority opinion posits that whether there was a waiver of the advisory jury instruction challenge and whether Unger suffered from ineffective assistance of counsel are issues so inextricably intertwined or "dependent" that they must be considered together for the purposes of preservation. Majority op. at 407–08, 48 A.3d at 256. The Majority opinion uses the "inextricably intertwined" characterization as rhetorical cover to bootstrap its revisitation (see the dissent in *Adams* ) of the already decided question of whether *Stevenson* and *Montgomery* set forth a new constitutional rule. *Id.* Indeed, the Majority opinion goes so far as to present this as an open question requiring an answer, which, based on our holding in *Adams,* it clearly is not. *Id.*

The "inextricably intertwined" invocation proffered by the Majority opinion, while applicable admittedly in some cases, is flawed fundamentally here. In the cases cited by the Majority opinion, in support of its assertion, the Court addressed an issue related closely, or one rising from the same operative facts, but only after the related issue was *preserved properly.* Majority op. at 407–08, 48 A.3d at 256 (citing, among others,

*J.P. Delphey Ltd. P'ship v. Mayor & City of Frederick*, 396 Md. 180, 196 n. 15, 913 A.2d 28, 38 n. 15 (2006); *Ross v. State Bd. of Elections*, 387 Md. 649, 659, 876 A.2d 692, 698 (2005)). That is not the case here. The first issue, whether Unger was prejudiced by the trial judge's advisory jury instructions, was waived by Unger's failure to object timely. This is based on our decisions in *Adams, Stevenson,* and *Montgomery.* The second issue, whether Unger received ineffective assistance of counsel based on his trial attorney's failure to object to the advisory jury instructions was waived because Unger failed to present this argument to the post-conviction court. Two wrongs, in this case, do not make a right. Unlike the cases relied on in the Majority opinion, there is no issue preserved properly to anchor a common issue for the intertwining claimed by the Majority. The Majority opinion uses the "inextricably intertwined" analysis simply as a chimera for renewing and elevating its attack (expressed previously as a dissent) on the Court's holding in *Adams.*

Conceptually, I can understand disagreement on the issue of whether this Court should excuse Unger's waiver, by exercise of the Court's power of discretion to decide the issue of ineffective assistance of counsel for failure to object to the advisory jury instructions. I can not excuse, however, the Majority opinion's abrogation of the principles of stare decisis in order to overturn directly the holding of *Adams* that *Stevenson* and *Montgomery* did not announce a new principle of state constitutional law.

The members of this Court in the Majority bear the burden of upholding the stare decisis principles that ensure a predictable, even-handed development of common law.[7] Although most of them expressed previously their disagreement with the reasoning and result in *Adams,* that alone does not justify the 180 degree turn the Court takes today. The Majority

---

7. To be sure, three members of the Majority here reiterate views consistent with their dissent in *Adams.* Nonetheless, I submit more is required, before deviating from stare decisis, than simply re-potting those dissenting views as a Majority opinion here.

opinion should articulate clearly why this was necessary. A mere *ipse dixit* that the waiver holdings of *Adams* and *Stevenson* are "erroneous" and "wrongly decided" does not satisfy the required justification for departure from stare decisis. Maj. op. at 417, 48 A.3d at 261–62.[8]

Stare decisis means to stand by the thing decided and provides "evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Livesay v. Baltimore Cnty.*, 384 Md. 1, 14, 862 A.2d 33, 40–41 (2004) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720, 737 (1991)). We noted the Supreme Court's teaching that stare decisis " 'permits society to presume that bedrock principles are founded in the law rather than in the *proclivities of individuals,* and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact.' " *Livesay,* 384 Md. at 15, 862 A.2d at 41 (quoting *Vasquez v. Hillery,* 474 U.S. 254, 265–66, 106 S.Ct. 617, 624, 88 L.Ed.2d 598, 610 (1986)) (emphasis added). A fixed, established body of law provides citizens with certainty, "not sub-

---

8. The select cases relied upon by the Majority opinion in support of its departure from stare decisis are puzzling. While *Townsend v. Bethlehem–Fairfield Shipyard, Inc.,* is cited often for the proposition that "it is sometimes advisable to correct a decision or decisions wrongly made in the first instance," the ultimate conclusion in that case was that it was "more important that the law should remain settled as it is than another interpretation possibly more logical should now, after all these years, be given to it." 186 Md. 406, 417, 422, 47 A.2d 365, 370, 372 (1946). In *Cure v. State,* 421 Md. 300, 318–19, 26 A.3d 899, 910 (2011), these Court's opinion explained clearly and fully why ambiguity in the holding of a prior decision necessitated revisiting an earlier question. The other cases cited by the Majority opinion illustrate examples of prior *inconsistent* holdings from the Court which required correction. These decisions set forth clearly the rationale for doing so. *See Harris v. Bd. of Educ.,* 375 Md. 21, 825 A.2d 365 (2003); *State v. Kanaras,* 357 Md. 170, 742 A.2d 508 (1999); *Owens–Illinois v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992). I am not advancing here the view that stare decisis is absolute, only that proper deviation from its principles requires adequate justification, which is lacking in the Majority opinion here.

ject to change because some judge or judges think different-ly." *Perry v. State*, 357 Md. 37, 97, 741 A.2d 1162, 1194 (1999).

Acknowledging that stare decisis is not an inexorable command, deviation from its principles should be done only in extraordinary circumstances, when this Court finds changed circumstances (not just personnel), or increased knowledge that "the rule has become unsound in the circumstances of modern life, a vestige of the past, no longer suitable to our people." *Harrison v. Montgomery Cnty. Bd. of Educ.*, 295 Md. 442, 459, 456 A.2d 894, 903 (1983). In cases where this Court has upset its previous decisions in contravention of stare decisis, we have done so with great care, taking the time to set forth a clear justification for our action. *See e.g. Price v. State*, 405 Md. 10, 23, 949 A.2d 619, 627 (2008) (where Judge Eldridge justified at great length upsetting Maryland's long-standing acceptance of legally inconsistent jury verdicts in criminal cases); *Bozman v. Bozman*, 376 Md. 461, 496, 830 A.2d 450, 471 (2003) (noting the "overwhelming weight of authority" supporting a reversal of interspousal immunity, "a vestige of the past, whose time has come and gone."); *Boblitz v. Boblitz*, 296 Md. 242, 462 A.2d 506 (1983) (finding no firm public policy reason for retaining an earlier created judicial immunity). This Court may deviate also from the principles of stare decisis when a prior decision is erroneous clearly. *Perry*, 357 Md. at 97, 741 A.2d at 1194 ("it is sometimes advisable to correct a decision or decision wrongly made in the first instance, if it is found that the decision is clearly wrong and contrary to other established principles").

We do not have before us here a situation where society has evolved to such a new order that requires us to disrupt or dispute the long ago holdings of *Stevenson* and *Montgomery*. What we have here is simply the resurrection of previously rejected views. Whether *Stevenson* and *Montgomery* announced a new constitutional standard is not before the Court properly in this case. *Hillery*, 474 U.S. at 265, 106 S.Ct. at 624, 88 L.Ed.2d at 610 (Stare decisis ensures that "the law will not merely change erratically, but will develop in a principled and intelligible fashion.").

The Majority opinion, concluding that the issue of ineffective assistance of counsel for failure to object to the advisory jury instructions was preserved properly and is before the Court, does not proceed to analyze the merits of that issue. Instead the opinion diverts to whether *Stevenson* and *Montgomery* announced a new state constitutional standard and concludes that Unger did not waive his right to appeal the advisory jury instructions under 7–106(c)(2). Indeed, this departure into overturning *Adams* may surprise the parties here, both of which briefed the issue of ineffective assistance of counsel under the *Strickland* standard, *infra,* and relied upon the holding in *Adams* as a basis undergirding the claim. Unger's surprise at the Majority's twist will undoubtedly be somewhat more muted than that of the State.

### ii. Failure to Request Reasonable Doubt Instruction at Close of Evidence

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established the standard in criminal cases for reviewing a defendant's allegation that he or she received ineffective assistance of counsel. At the outset, the Court observed that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93. The Court outlined a two-pronged test to be applied in determining whether the defendant's right to effective assistance of counsel has been violated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the

defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

In order to satisfy the performance prong of the test, a defendant alleging ineffective assistance of counsel "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. "Judicial scrutiny of counsel's performance must be highly deferential" and should recognize "the wide latitude counsel must have in making tactical decisions." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. In addition, a reviewing court must be careful "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* Finally, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83, 93 (1955)).

Regarding the prejudice prong of the ineffectiveness inquiry, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697. On the other hand, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland,* 466 U.S. at 693,

104 S.Ct. at 2068, 80 L.Ed.2d at 697. Rather, in order to satisfy the prejudice prong of the test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. In other words, "[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068–69, 80 L.Ed.2d at 698. In making such a determination, the reviewing court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Additionally, the reviewing court "must consider the totality of the evidence before the judge or jury," remembering that "[s]ome errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Strickland,* 466 U.S. at 695–96, 104 S.Ct. at 2069, 80 L.Ed.2d at 698–99.

The Supreme Court, illuminating the prejudice component of the ineffectiveness inquiry, noted that, "[i]n certain Sixth Amendment contexts, prejudice is presumed." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696. Prejudice will be presumed in situations where the defendant suffers "[a]ctual or constructive denial of the assistance of counsel altogether" or where the State engages in "interference with counsel's assistance." *Id.* In those circumstances, prejudice "is so likely that case-by-case inquiry into prejudice is not worth the cost." *Id.* Moreover, "such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent." *Id.* A more limited presumption of prejudice also is applicable "when counsel is burdened by an actual conflict of

interest." *Id.* Absent the actual or constructive denial of the assistance of counsel, or a conflict of interest situation, however, "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697.

As observed by the Supreme Court, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which ... will often be so, that course should be followed." *Id.* I would find that Unger failed to satisfy his burden of demonstrating actual prejudice resulting from his trial counsel's failure to request a reasonable doubt instruction at the close of the evidence, and, therefore, not address whether trial counsel's alleged failure in this regard constituted deficient performance.

In addressing the prejudice prong of the *Strickland* analysis, Unger eschews any attempt to demonstrate actual prejudice resulting from his trial counsel's failure to request that the trial court provide a reiterative explanation of the reasonable doubt standard after the conclusion of the evidence. In other words, Unger does not contend that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." This is likely due to the fact that, as noted by the State in its brief, the evidence of Unger's culpability in the robbery of Kim's Corner and the murder of Officer Kline was overwhelming. Rather, Unger maintains that his trial counsel's alleged error resulted in "structural error," [9] which, according to

---

**9.** A "structural error" has been described as one which "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302, 331 (1991). Stated another

Unger, relieves him of his burden of showing actual prejudice under *Strickland.* This dog will not hunt, as the aphorism goes.

Unger directs our attention to a number of cases from federal Courts of Appeal in support of his contention that "[i] f a defendant meets his burden with regard to the first prong of *Strickland* and, as in [Unger's] case, a 'structural error' results from counsel's deficient performance, then the defendant 'need not establish actual prejudice' in order to prove his claim of ineffective assistance of counsel." *See Owens v. United States,* 483 F.3d 48, 64 (1st Cir.2007); *Becht v. United States,* 403 F.3d 541, 549 (8th Cir.2005); *Sustache–Rivera v. United States,* 221 F.3d 8, 17 (1st Cir.2000); *McGurk v. Stenberg,* 163 F.3d 470, 475 (8th Cir.1998); *United States v. Canady,* 126 F.3d 352, 364 (2nd Cir.1997). In response, the State proffers *Purvis v. Crosby,* 451 F.3d 734 (11th Cir.2006), as an example that the federal courts remain divided on the issue. *See Purvis,* 451 F.3d at 740 ("It is one thing to recognize that structural errors and defects obviate any requirement that prejudice be shown on direct appeal and rule out an application of the harmless error rule in that context. It is another matter entirely to say that they vitiate the prejudice requirement for an ineffective assistance claim.").

Despite some disagreement among the federal appellate courts, the decision of the Supreme Court in *Strickland* suggests convincingly that prejudice satisfying the second prong of the ineffective assistance of counsel inquiry will be

way, a "structural error" is one that "transcends the criminal process." *Fulminante,* 499 U.S. at 311, 111 S.Ct. at 1265, 113 L.Ed.2d at 332. Examples include "the total deprivation of the right to counsel at trial," "a judge who was not impartial," "unlawful exclusion of members of the defendant's race from a grand jury," "the right to self-representation at trial," and "the right to public trial." *Fulminante,* 499 U.S. at 309–10, 111 S.Ct. at 1265, 113 L.Ed.2d at 331. As the Supreme Court observed, " '[w]ithout these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.' " *Fulminante,* 499 U.S. at 310, 111 S.Ct. at 1265, 113 L.Ed.2d at 331 (quoting *Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460, 470 (1986)).

presumed only in the narrow situations described by the Court, namely, where there is evidence of actual or constructive denial of the assistance of counsel or actual conflict of interest. *Strickland,* 466 U.S. at 692–93, 104 S.Ct. at 2067, 80 L.Ed.2d at 696–97. Such a conclusion is buttressed by *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), decided the same day as *Strickland,* in which the Supreme Court described the situations in which prejudice in an ineffective assistance of counsel claim will be presumed as including (1) where the accused is subjected to "the complete denial of counsel," (2) where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) where, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic,* 466 U.S. at 659–60, 104 S.Ct. at 2047, 80 L.Ed.2d at 668; *see also Walker v. State,* 391 Md. 233, 246–47, 892 A.2d 547, 554–55 (2006) (noting the presumed prejudice situations described in *Cronic* ). The Supreme Court went on to state that "[a]part from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Cronic,* 466 U.S. at 659 n. 26, 104 S.Ct. at 2047 n. 26, 80 L.Ed.2d at 668 n. 26. *See also Walker,* 391 Md. at 247, 892 A.2d at 555 ("With the exception of these three situations, a defendant must articulate 'how specific errors of counsel undermined the reliability of the finding of guilt,' *i.e.,* the defendant must prove actual prejudice." (quoting *Cronic,* 466 U.S. at 659 n. 26, 104 S.Ct. at 2047 n. 26, 80 L.Ed.2d at 668 n. 26)); *Bowers v. State,* 320 Md. 416, 425, 578 A.2d 734, 738 (1990) ("As to the prejudice component, putting aside those few situations in which prejudice is presumed (actual or constructive denial of counsel and actual conflict of interest), the defendant must show that the particular and unreasonable errors of counsel 'actually had an adverse effect on the defense.' " (quoting *Strickland,* 466 U.S. at

693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697)). I reiterate here our observations in *Walker* and *Bowers* that, in Maryland, unless the error of which the defendant complains falls into the categories of error for which the Supreme Court has declared that prejudice under *Strickland* will be presumed, the defendant must demonstrate that he or she suffered actual prejudice as the result of counsel's deficient performance.

The error of counsel identified by Unger in this case as constituting deficient performance is that trial counsel failed to request that the trial court provide the jury, at the conclusion of the evidence, with a redundant explanation of the reasonable doubt standard. It is beyond dispute, and Unger does not contend otherwise, that that "error" does not constitute either the actual or constructive denial of counsel contemplated by the Supreme Court in *Strickland* and *Cronic*, nor does it present any conflict of interest concerns. As such, under the clear dictates of the Supreme Court, the "error" of which Unger complains is not one that would give rise to a presumption of prejudice for purposes of an ineffective assistance of counsel claim. Likewise, counsel's "failure" in this regard is not of a similar magnitude to the narrow categories of presumed prejudice situations described by the Supreme Court, particularly in light of the fact that the trial court, in its initial remarks to the jury, outlined specifically the beyond a reasonable doubt standard and provided an explanation regarding the meaning of "reasonable doubt," and referred the jury back to those initial remarks at the close of the evidence, advising the jury that it "must be convinced beyond a reasonable doubt as herein before defined that the State has proven each and every element required by law to constitute the offense charged." [10] Because Unger seeks to fulfill the preju-

---

**10.** Unger seems to suggest in his brief that, because preliminary remarks are not "instructions," the trial court, in essence, failed to give the jury a reasonable doubt instruction, which, I acknowledge, might rise to the magnitude of an error justifying the presumption of prejudice under *Strickland*. This is not, however, what happened at Unger's trial. Rather, the trial court instructed the jury numerous times that, to convict Unger, it was required to find his guilt beyond a reasonable

dice prong of *Strickland* solely by the application of the presumption of prejudice (which we have found inapplicable in the present case and which we have held may not be satisfied by so-called "structural error") and makes no contentions that counsel's failure resulted in actual prejudice to his defense, I would hold that Unger's claim of ineffective assistance of counsel, based upon trial counsel's failure to request that the trial court provide the jury with an explanation of the reasonable doubt standard at the close of the evidence, must fail.[11] As such, I would affirm the judgment of the Court of Special Appeals.

Judge ADKINS authorizes me to state that she joins the views expressed in this concurring and dissenting opinion.

---

doubt, and provided in its initial remarks a thorough explanation of reasonable doubt. The only potential "error" that Unger reasonably may claim resulting from trial counsel's failure to request an explanation of reasonable doubt at the conclusion of the evidence is that the jury did not have the concept of reasonable doubt re-explained to them prior to their deliberations. Such an "error" pales in comparison to the actual or constructive denial of counsel or an actual conflict of interest.

11. I shall not hypothesize as to how counsel's alleged "error" might have caused Unger's defense to suffer actual prejudice, particularly as Unger makes no such contention in his arguments before this Court. In any event, any such argument likely would be undermined (1) by the fact that the trial court provided the jury with an explanation of reasonable doubt prior to the evidentiary phase of trial and reminded the jury after the close of the evidence of their duty to find Unger's guilt beyond a reasonable doubt, and (2) by the overwhelming evidence of Unger's guilt presented by the State. In no uncertain terms, it would seem to be nearly impossible to contend that, had Unger's trial counsel requested that the trial court restate, after the close of the evidence, the definition of reasonable doubt previously provided to the jury, and the trial court repeated such instruction, there is any reasonable probability that the result would have been different. It is clear that the jury knew and understood the burden of proof borne by the State.